[No. S097104. July 1, 2002.]

MARY J. JEFFERSON, Plaintiff and Appellant, v.
CALIFORNIA DEPARTMENT OF YOUTH AUTHORITY et al.,
Defendants and Respondents.

**COUNSEL**

Law Offices of Leo James Terrell, Leo James Terrell and Rebecca J. Riley for Plaintiff and Appellant.

Knapp, Petersen & Clarke, André E. Jardine and Anastasia M. Baumeister as Amici Curiae on behalf of Plaintiff and Appellant.

Bill Lockyer, Attorney General, David S. Chaney, Assistant Attorney General, Angela Sierra and Silvia M. Diaz, Deputy Attorneys General, for Defendants and Respondents.

Hill, Farrer & Burrill, Suzanne J. Holland and Warren J. Higgins as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**BROWN, J.**—In this case, we consider whether a compromise and release executed in a workers' compensation proceeding, that expressly releases "all claims and causes of action" relating to an injury and that includes an attachment establishing the parties' intent to include civil claims within the scope of the release, bars a civil action under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) for damages relating to the same events that resulted in the injury. We conclude the express terms of the release evidence the parties' intent to settle the FEHA action. Accordingly, we affirm the judgment of the Court of Appeal.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The California Department of Youth Authority (the Youth Authority) employed Mary J. Jefferson from September 1992 to February 1994 to work part time as a teacher's assistant in the high school classroom of Larry Berg.

Jefferson claims that, while working in Berg's classroom, Berg and his students regularly used derogatory language when referring to women. The language offended Jefferson, who complained to Berg and his supervisors. Nevertheless, the sexually offensive conduct continued.

Eventually, the Youth Authority reassigned Jefferson to a different classroom, but at about the same time, her doctor recommended she stop working due to work-related stress. Jefferson stopped working on February 24, 1994, and on March 10, 1994, she filed a workers' compensation claim describing her injury as "adjustment disorder with anxious mood, psychological factors affecting physical condition of hypertension and allergies." She indicated in her report of injury that her injuries were caused by "(sexual harassment) sexually degrading words used to describe females, by Mr. Larry Berg and wards [students]. (Hostile work environment) No class room policies to control the behavior of the wards in the classroom. The environment was unsafe without policies, offensive, hostile and intimidating."

In October 1994, Jefferson also filed a sex discrimination claim with the California Department of Fair Employment and Housing (DFEH). Her allegations were essentially the same as those underlying her workers' compensation claim. Specifically, she alleged she was "subjected to work-environment sex harassment. . . . The harassment was verbal in nature which created an offensive and hostile working atmosphere." The DFEH issued a right-to-sue letter on October 10, 1995. On July 9, 1996, Jefferson settled her workers' compensation claim against the Youth Authority using the mandatory form adopted by the Workers' Compensation Appeals Board (WCAB) for compromise and release of claims. (See Cal. Code Regs., tit. 8, § 10874 [requiring every compromise and release agreement to be in a form prescribed by the WCAB].) As consideration for the settlement, she received a net payment of $41,639 in addition to the significant compensation she had already received, which included temporary disability indemnity for one year, $8,360 in permanent disability indemnity, and $27,360.07 in medical expenses. She testified at her deposition that she read the release before signing it and was represented by counsel at the time.

In the preprinted section of the release form, Jefferson stated clearly that, upon approval by the WCAB and payment, she "releases and forever discharges [the Youth Authority] from all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of [the claimed] injury." In a typed attachment to the release, she added: "The Applicant [Jefferson] desires to avoid the hazards of litigation and the defendants wish to buy their peace. . . . The settlement is to compensate for all aspects of all injuries included herein. [¶] . . . [A]pplicant agrees that this release will apply to all unknown and unanticipated

injuries and damages resulting from such accident, and all rights under Sections [*sic*] 1542 of the Civil Code of California are hereby expressly waived. [¶] . . . [¶] . . . [A]pplicant agrees that this release extends to and covers the . . . employees of the defendants . . . ." The same attachment also quoted the text of Civil Code section 1542 (hereafter section 1542), which protects parties from inadvertently settling unknown claims.

On August 2, 1996, the WCAB approved the compromise and release, "having considered the entire record," including the medical record. Jefferson filed this civil action on August 23, 1996, against the Youth Authority and Larry Berg. After dismissal of several causes of action, the only remaining cause of action alleged sex discrimination in violation of the FEHA based on the same events that gave rise to her workers' compensation injury and alleged essentially the same injury (emotional and mental anguish, emotional distress, and humiliation). Respondents filed a motion for summary judgment as to this cause of action, citing the broad language of the workers' compensation compromise and release, and during the hearing on this motion, the parties conceded that there was no extrinsic evidence to aid the court in interpreting the language of the release. The trial court granted summary judgment, concluding "the release executed by Jefferson bars her complaint as a matter of law. The release referred to matters that were clearly outside the scope of worker's compensation. Having accepted the benefit of the payment of $49,500.00 [*sic*], the Plaintiff cannot avoid the express terms of the release." The court entered judgment in respondents' favor, and Jefferson timely filed a notice of appeal.

The Court of Appeal affirmed the judgment, holding that the preprinted language releasing "all claims and causes of action" settled the FEHA action. The Court of Appeal applied "[s]tandard contract principles," which require strict enforcement of agreements, in the absence of fraud, duress, or other unfair practices. The court also noted that the text of the typed attachment to the preprinted release form necessarily contemplated the settlement of civil claims as well as workers' compensation claims. We granted Jefferson's petition for review, and we now affirm.

## II. Discussion

 " 'The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding.' " (*Palmquist v. Mercer* (1954) 43 Cal.2d 92, 98 [272 P.2d 26], quoting *Smith v. Occidental etc. Steamship Co.* (1893) 99 Cal. 462, 470-471 [34 P. 84].) We have been

particularly rigorous about strictly enforcing broad release language in workers' compensation settlements, because, in that context, WCAB oversight helps to ensure fairness. (*Johnson v. Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 964, 973 [88 Cal.Rptr. 202, 471 P.2d 1002] (*Johnson*).) At the same time, however, we have sought to protect the interests of workers who execute workers' compensation settlement documents without a full appreciation of what claims or rights might later arise. (*Sumner v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 965, 972-973 [191 Cal.Rptr. 811, 663 P.2d 534] (*Sumner*).) ▮ We conclude that the broad settlement language at issue here is enforceable as written. Two points in particular support our conclusion: (1) the parties included an attachment in their settlement agreement that made clear their intent to settle matters outside the scope of workers' compensation; and (2) Jefferson offered no extrinsic evidence establishing the parties' intent to exclude her FEHA claim from the settlement.

In *Johnson, supra,* 2 Cal.3d 964, we considered a widow's claim for workers' compensation death benefits after her husband suffered a work-related injury to his lungs, settled his workers' compensation claim by compromise and release, and then died (allegedly as a result of the work-related injury). (*Id.* at pp. 968-969.) At issue was whether the husband's release of "all claims," which was based on the same preprinted language that is at issue here, encompassed death benefits, though the compromise and release did not make any express reference to death benefits. (*Id.* at p. 969.) We concluded that the release language did include death benefits, noting that workers' compensation differed from tort proceedings in that the settlement had to be approved by the WCAB, thereby protecting the rights of employees. (*Id.* at p. 973.) We also reaffirmed that a party may settle unknown claims if the surrounding facts establish the parties' intent to do so. (*Id.* at p. 973, fn. 6.)

Our holding in *Johnson* was in the context of a proceeding in which significant evidence had come before the workers' compensation judge, thereby permitting the judge to assess the fairness of the release. (*Johnson, supra,* 2 Cal.3d at p. 968.) We noted that the WCAB's preprinted form did not inform injured workers of the possibility of obtaining death benefits (should the injury result in death), nor did it expressly state that the release covered death benefits. (*Id.* at p. 974.) We emphasized that the judge must have sufficient information to assess the fairness of the settlement, and we urged the WCAB to develop a new form that would provide better notice to injured workers and also give judges an option of excluding death benefits from the settlement. (*Ibid.*)

The WCAB did not do as we suggested, and in *Sumner, supra,* 33 Cal.3d 965, we were again presented with essentially the same issue. In *Sumner,*

however, the employee executed the standard compromise and release form without the advice of independent counsel, and the judge did not have the benefit of testimony concerning the extent of the injury. We concluded that the concerns that had caused us in *Johnson* to urge the WCAB to change its form were "far from fanciful." (*Sumner*, at p. 972.) Therefore, we declared that, in the future, the preprinted compromise and release language should not be uniformly construed as settling claims for death benefits, though the employer might offer evidence in a particular case to establish the parties' intent to settle death benefits. (*Id.* at pp. 972-973.)

Subsequent to our decision in *Sumner*, the WCAB modified its compromise and release form to permit the parties to make specific stipulations with respect to death benefits. At the same time, courts have continued to adhere to the long-established general rule that—in the absence of fraud, deception, or similar abuse—a release of " '[a]ll [c]laims' " (*Edwards v. Comstock Insurance Co.* (1988) 205 Cal.App.3d 1164, 1166 [252 Cal.Rptr. 807] (*Edwards*); *Skrbina v. Fleming Companies* (1996) 45 Cal.App.4th 1353, 1360 [53 Cal.Rptr.2d 481]) covers claims that are not expressly enumerated in the release. In these circumstances, of course, extrinsic evidence might establish that the release refers only to all claims *of a particular type*, and consideration of extrinsic evidence would be appropriate where—as here— the parties know of a particular claim but do not refer to it expressly in their release. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 527 [117 Cal.Rptr.2d 220, 41 P.3d 46].) But, here, Jefferson did not present any extrinsic evidence, and absent such evidence, " ' "[t]he law imputes to a person an intention corresponding to the reasonable meaning of his words and acts." ' " (*Edwards*, at p. 1169, citing *Crow v. P.E.G. Construction Co., Inc.* (1957) 156 Cal.App.2d 271, 278-279 [319 P.2d 47].) This rule applies to releases in civil actions (*Edwards*, at p. 1169), and a less rigorous rule for workers' compensation releases would make no sense considering the protections afforded by WCAB oversight. (*Johnson, supra*, 2 Cal.3d at p. 973.)

Moreover, when Jefferson executed the compromise and release in this case covering "all claims and causes of action," she fully appreciated the possibility of obtaining FEHA damages. In fact, at the time of the settlement, she had already filed a complaint with the DFEH and therefore not only contemplated the possibility of FEHA remedies but was also actively pursuing those remedies. Therefore, when she released "all claims and causes of action" relating to the injury, she knew, or should have known, that her FEHA claim would fall within the scope of that broad language. Furthermore, here the workers' compensation judge had sufficient information to assess the fairness of releasing Jefferson's FEHA claim, because the same evidence (including expert medical opinion) that enabled him to evaluate the

merits of the workers' compensation claim also enabled him to evaluate potential FEHA remedies for the same injury. Under these circumstances, and in the absence of extrinsic evidence, the release of "all claims and causes of action" must be given a comprehensive scope.

If courts did not follow this rule, "it [would be] virtually impossible to create a general release that . . . actually achieve[d] its literal purpose" (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1172-1173 [6 Cal.Rptr.2d 554]), and language releasing all claims would be inherently misleading, causing unfair surprise to parties that offer payment on the reasonable expectation that all claims are settled, only later to face continuing litigation. (*Edwards, supra*, 205 Cal.App.3d at p. 1169.) Moreover, if courts did not enforce general releases, an employer like the Youth Authority, seeking a comprehensive settlement, would have to struggle to enumerate all claims the employee might plan to allege. The employer would never be able to know for sure that it had thought of every claim, and therefore it would never be able to put a definitive end to the matter. Employers would then be disinclined to enter into settlements, because certainty as to the full extent of liability is one factor that motivates employers to choose settlement over litigation.

Jefferson argues, however, that the broad release language at issue here was part of a preprinted form, suggesting that it therefore carries less weight. We decline to discount the language of the release on this account, because doing so would only discourage the use of preprinted forms, which would only increase the uncertainty and cost of litigation. A government agency does not render legal language somehow less operative by standardizing it in a preprinted form, and a party (especially one represented by counsel) can just as easily read and understand a preprinted form as one specially drafted for a particular purpose. Moreover, the preprinted form at issue here, though mandatory (Cal. Code Regs., tit. 8, § 10874), did not compel Jefferson to settle her FEHA action, because the form provided a space in which the parties could enumerate express exceptions to the otherwise broad settlement. By referring in its preprinted release form to "all claims and causes of action," the WCAB appears to be encouraging comprehensive settlements that will bring a close to litigation, including settlement of potential civil claims, but the form certainly does not *compel* that result.

Furthermore, if the preprinted reference to "all claims and causes of action" is somehow not clear enough to establish the parties' intent to settle civil claims, then their express reference to section 1542 in a specially prepared attachment to the compromise and release certainly serves that purpose. Section 1542 provides: "A general release does not extend to

claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." We construed this provision in *Casey v. Proctor* (1963) 59 Cal.2d 97, 113 [28 Cal.Rptr. 307, 378 P.2d 579], as requiring a factual showing that the parties intended to settle unknown claims. Here, the parties added a typed attachment to their compromise and release, quoting section 1542 and also stating, "this release will apply to all unknown and unanticipated injuries . . . and all rights under Section 1542 . . . are hereby expressly waived." Though Jefferson's FEHA action was not an "unknown [or] unanticipated injur[y]," the addition of this language from the Civil Code in the compromise and release establishes unambiguously the parties' intent that the release cover possible civil claims. In addition, the same attachment states that the "release extends to and covers the . . . *employees* of the defendants." (Italics added.) Claims against an employee are, of course, not cognizable under the workers' compensation system (Lab. Code, § 3600), and therefore, again, the terms of the compromise and release establish that the parties intended the release to cover possible civil claims.

Jefferson urges us to disregard the attachment because it does not expressly refer to the FEHA action and "is clearly . . . boilerplate . . . and not something created or specifically negotiated uniquely for [her] workers' compensation action." Assuming she is correct factually that the attachment was not created for this case, she does not explain why a generic attachment should carry less weight in this context than a custom-made one. For our purposes, the critical points are that the parties incorporated the attachment into their compromise and release agreement and that it clearly establishes their intent to include civil claims within the scope of their settlement.

Several Court of Appeal decisions have considered, in various contexts, the issue we now decide. *Lopez v. Sikkema* (1991) 229 Cal.App.3d 31 [280 Cal.Rptr. 7] (*Lopez*), involved a wrongful death and civil rights action against an employer, after the fatal shooting of a worker. (*Id.* at pp. 33-34.) The worker's dependents had also brought a workers' compensation claim (*ibid.*), and the employer settled the workers' compensation claim using a standard preprinted compromise and release form in which the decedent's dependents agreed to " 'release and forever discharge said employer . . . from all claims, demands, actions or causes of action, of every kind or nature whatsoever, on account of, or by reason of the injury and death . . . , and in particular of any, all and every claim or cause of action . . . *under Division IV of Labor Code* of the State of California,' " division 4 being the codification of the workers' compensation law. (*Lopez*, at p. 35.) By referring *in particular* to workers' compensation claims, the preprinted release form at

issue in *Lopez* made clear that the release was not limited to workers' compensation claims. Nevertheless, the Court of Appeal reversed summary judgment in the civil action, concluding that a triable issue of fact remained as to whether the parties intended the release to cover the civil claims alleged in the complaint. (*Lopez*, at pp. 38-39.)

First, the court found no evidence in the record that, at the time of the workers' compensation settlement, the parties discussed the civil action (which was then pending) or that the judge knew about the civil action. (*Lopez, supra*, 229 Cal.App.3d at p. 38.) Based on *Johnson* and *Sumner*, the court concluded the judge lacked "sufficient information upon which to determine the desirability of releasing the [civil] claims or the adequacy of the compensatory consideration." (*Lopez*, at p. 38.) Second, the court noted that the order approving the settlement referred only to " 'settling *this* case.' " (*Ibid.*, italics added.) The court opined that, if the employer wanted to settle the civil claims, in addition to workers' compensation claims, it should have included express language to that effect in the release. Absent such language, the scope of the release was ambiguous. (*Id.* at pp. 38-39.) In other words, though the release expressly applied to " 'all claims . . . or causes of action' " (*id.* at p. 35), the court put the burden on *employers* to enumerate the actions covered by the release, rather than putting the burden on *employees* to enumerate the actions *not* covered.

The Court of Appeal again considered the same issue in *Asare v. Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856 [2 Cal.Rptr.2d 452] (*Asare*), but on facts that made the worker's argument much more compelling than it is here. In *Asare*, as here, the worker was pursuing a FEHA claim after settling a related workers' compensation proceeding by way of compromise and release. (*Id.* at pp. 860-861.) The compromise and release form at issue in *Asare* included the same preprinted language at issue here, purporting to release " 'all claims and causes of action' " (*id.* at p. 861), but the attorney who represented the worker in the workers' compensation proceeding recalled that the parties had discussed the FEHA action at the time of the workers' compensation settlement and had orally agreed that the settlement did not cover that action. (*Id.* at p. 861.) That fact, of course, makes *Asare* distinguishable from this case, because Jefferson presented no extrinsic evidence indicating the parties intended to exclude her FEHA action from the release. The court in *Asare* also found significant that the worker had a different attorney in the workers' compensation proceeding than in the FEHA action and that no explicit reference to the FEHA action appeared in the compromise and release. (*Id.* at p. 863.) The court agreed with *Lopez, supra*, 229 Cal.App.3d 31, that the burden should be on employers to enumerate claims that fall within the scope of the settlement, even when the settlement expressly refers to all claims. (*Asare*, at p. 864.)

Finally, the Court of Appeal addressed the same issue in *Delaney v. Superior Fast Freight* (1993) 14 Cal.App.4th 590 [18 Cal.Rptr.2d 33] (*Delaney*). *Delaney* involved a worker who was terminated after he threatened to kill his supervisor. (*Id.* at p. 593.) The worker filed a workers' compensation claim and also a civil suit alleging FEHA and other causes of action. (*Ibid.*) After considerable procedural maneuvering not relevant here, the worker dropped the FEHA action, but continued to allege, among other things, negligent and intentional infliction of emotional distress. (*Id.* at pp. 593-594.) The trial court granted summary judgment, concluding workers' compensation was the exclusive remedy for any emotional distress the worker might have suffered. (*Id.* at p. 594.) On appeal, the worker challenged that conclusion, but while the appeal of the civil action was pending, the worker executed a compromise and release in his workers' compensation case, using the same preprinted language that is at issue here. (*Id.* at p. 599.) The employer then sought dismissal of the appeal in the civil action, arguing that the compromise and release settled the action. (*Ibid.*)

The Court of Appeal rejected the employer's argument. It noted that the portion of the compromise and release on which the employer relied was merely preprinted language that "appears on all standard workers' compensation forms." (*Delaney, supra*, 14 Cal.App.4th at p. 599.) The release made no specific reference to the then pending civil action and therefore, according to the court, only applied to claims falling "within the scope of the workers' compensation system." (*Ibid.*) The court opined that the parties should have expressly addressed the civil action in the compromise and release, but because they did not, a question of fact existed as to the scope of the release. (*Id.* at p. 600.)

In summary, the Court of Appeal decisions that have considered the issue have been consistent in their view that the preprinted language in a workers' compensation compromise and release form should be narrowly construed to apply only to workers' compensation claims. As discussed, however, *Asare* is distinguishable from this case because extrinsic evidence in *Asare* established the parties' intent *not* to settle the FEHA action. (*Asare, supra*, 1 Cal.App.4th at pp. 862-863.) The record in this case includes no such evidence. As for *Lopez* and *Delaney*, we note that here, unlike those cases, an attachment to the compromise and release makes clear the parties' intent to settle civil claims in addition to workers' compensation claims. Because *Lopez* and *Delaney* did not consider the legal significance of a comparable attachment, we find those cases factually distinguishable. In addition, in *Lopez* and *Delaney*, the civil actions were pending at the time the parties executed their workers' compensation settlements, whereas here, Jefferson had not filed her FEHA action when she executed the compromise and

release, and the Youth Authority had no basis for assuming she intended to do so. In light of these distinctions, we need not consider whether *Lopez* and *Delaney* were correctly decided, and we neither approve nor disapprove their holdings.

Accordingly, we hold that when, as in this case, an employee has knowledge of a potential claim against the employer at the time of executing a general release in a workers' compensation proceeding, but has not yet initiated litigation of that claim, the employee has the burden of expressly excepting the claim from the release. Absent this exception, and absent contrary extrinsic evidence, a court will enforce general language, such as is found in the compromise and release and attachment in the present case, releasing all claims, including civil claims.

## III. CONCLUSION

We hold that the broad language in the compromise and release covers Jefferson's FEHA action, and therefore we affirm the judgment of the Court of Appeal.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring.—I agree with the majority that the release plaintiff executed pertained not only to her claims in the workers' compensation proceeding but also to any civil claims she may have had against her employer. There is one point, however, on which I wish to comment.

According to the majority, standardized language in the release stating that the employee is giving up " 'all claims and causes of action' relating to the injury" (maj. opn., *ante*, at p. 305) is sufficient to put any employee on notice that the release covers not only workers' compensation claims but also any potential claims the employee could assert against the employer in a civil lawsuit. To conclude otherwise, the majority says, would unduly burden employers because they "would have to struggle to enumerate all claims the employee might plan to allege." (Maj. opn., *ante*, at p. 306.) I do not share that view.

Although here the preprinted release form's language, considered together with the evidence presented, shows there was no misunderstanding on plaintiff's part that she was giving up all of her workers' compensation claims and also those she could have brought in a civil action under the Fair Employment and Housing Act, that may not always be true. Workers'

compensation proceedings are generally informal. And unlike plaintiff here, not every injured worker is represented by counsel. To ensure an employee's understanding that any preprinted release form executed as part of a settlement with the employer covers workers' compensations claims as well as any potential claims that could be brought in a civil lawsuit against the employer based on the same events leading to the injury, the form should say so not in obscure legal jargon but in clear and simple language. (Putting such language in bold letters would highlight its importance.) The proposed language, in my view, would be clearer than simply stating that the release form covers "all claims and causes of action." The added clarity would render it unnecessary to burden the employer with "enumerat[ing] all claims the employee might plan to allege," a concern of the majority. It would also promote fairness for both the injured employee and the employer by decreasing the chances of continuing litigation over what was or was not included in the release.

**MORENO, J.**—I concur in the majority opinion. I write separately to clarify what I believe to be the scope of and rationale for our holding.

As the majority correctly states: "[T]he Court of Appeal decisions that have considered the issue have been consistent in their view that the preprinted language in a workers' compensation compromise and release form should be narrowly construed to apply only to workers' compensation claims." (Maj. opn., *ante*, at p. 309.) The majority makes clear that it neither approves or disapproves of two of these decisions (*Lopez v. Sikkema* (1991) 229 Cal.App.3d 31 [280 Cal.Rptr. 7]; *Delaney v. Superior Fast Freight* (1993) 14 Cal.App.4th 590 [18 Cal.Rptr.2d 33]), and it approves of a third, *Asare v. Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856 [2 Cal.Rptr.2d 452], on the grounds that extrinsic evidence was introduced that the release was not intended to apply to civil claims. (Maj. opn., *ante*, at p. 309.)

Whatever the validity of the above-stated general rule that workers' compensation releases apply only to workers' compensation claims, the present case recognizes an exception to that rule. The majority distinguishes this case from *Lopez* and *Delaney* in part because, in the latter cases, the employees' suits had already been filed at the time the release was executed. The distinction is significant because the employers in *Lopez* and *Delaney* were in at least as good a position as the employees to enumerate pending civil claims in the release, and therefore would not have to "struggle to enumerate all claims the employee might plan to allege." (Maj. opn., *ante,* at p. 306.) In the present case, plaintiff had already filed a sex discrimination claim with the Department of Fair Employment and Housing under the Fair

Employment and Housing Act (FEHA) before she executed the release, but had not yet filed suit. Accordingly, plaintiff was in a better position than her employer to be aware of potential FEHA litigation. I agree with the majority that under this circumstance the burden should generally fall on the employee to except the contemplated litigation from a general release.

Thus, this is not a case in which the employee was unaware of potential civil claims. Nor is there any indication that the employee was misinformed or misled about the release: there was no extrinsic evidence of such misinformation, the employee was represented by counsel, and the consideration she received for signing the release was substantial. Given all the above circumstances, the majority correctly holds that the language of the compromise and release and attachment, releasing all claims including civil claims without exception, should be enforced.

Finally, I agree with Justice Kennard that the language of the preprinted form releasing civil claims may not be clear in all circumstances, especially given the informality of workers' compensation proceedings, and that such language should be clarified and highlighted.