[No. B179815. Second Dist., Div. Eight. June 22, 2006.]

SHELDON BUTLER, Plaintiff and Appellant, v.
THE VONS COMPANIES, INC., Defendant and Respondent.

COUNSEL

The deRubertis Law Firm, David M. deRubertis, David A. Lesser; Pine & Pine, Norman Pine and Beverly Tillett Pine for Plaintiff and Appellant.

Bononi Law Group and Michael J. Bononi for Defendant and Respondent.

OPINION

**FLIER, J.**—Appellant Sheldon Butler, a stock clerk for respondent The Vons Companies, Inc., entered into a "Compromise and Release Settlement Agreement" (Release Agreement) with Vons, after the resolution of an altercation that Butler had with a coemployee, Tim Furman (not a party to this appeal). A little less than two years thereafter, Butler filed the instant employment discrimination action, which is entirely distinct from the dispute involving Furman. The trial court granted Vons's motion for summary judgment on the ground that the Release Agreement barred the action. We find that it is a question of fact whether Vons intended to release the employment discrimination claim. Accordingly, we reverse the judgment.

## FACTS[1]

Butler, a Vons employee since 1990, was transferred to Vons store No. 3138 about September 1999. Prior to his transfer to store No. 3138, he did not experience any harassment. However, following his transfer to store No. 3138, Butler claims that he was harassed and discriminated against in store No. 3138 (for details, see pp. 945–946, *post*), and that this lasted for a year and a half until May 28, 2001, when he transferred to another Vons store, after which he was never subjected to such conduct again.

On May 9, 2001, while he was still working at store No. 3138, Butler got into an altercation with Furman, who was a manager. The next day, the store manager told Butler that he and Furman could both be terminated for their (mis)conduct on the previous day; Butler was then suspended from employment. On May 14, 2001, Butler's union filed a union grievance over his suspension.

The grievance was handled on Butler's behalf by Jose Ros, who was the business agent for Butler's union, UFCW Local 770. According to Ros, the facts surrounding the grievance were stated as: "Member was suspended for alleged altercation with manager Tim Furman." We refer to this proceeding hereafter as the "Furman grievance." The Furman grievance had nothing to do with any harassment or discrimination allegations (see pp. 945–946, *post*) of which Ros was not even aware at the time he filed and handled the grievance.

On May 17, 2001, after Butler had made verbal complaints to Vons's human resources representative Christy Deeley, Butler submitted a four-page handwritten statement in which he set forth allegations of racial harassment, discrimination and unfair treatment. These complaints extended to matters other than his altercation with Furman. Among other things, Butler wrote that coemployee Kenny Simonton "has said n----- to me before," that Simonton and Jimmy Ziese, another employee, had called him "boy," and that Ziese complained about Butler's using the restroom. Vons proceeded to investigate the matter; at one point, the Vons investigator prepared 23 pages of case notes that reflected interviews that had been conducted. The decision by Vons was to discipline Ziese; it is disputed whether Ziese was terminated or resigned.

In the meantime, Ros and, on behalf of Vons, Greg Rutkin went ahead with resolving the Furman grievance. Ros and Rutkin resolved the matter by an agreement that allowed Butler to return to work, but without receiving any of

---

[1] Unless otherwise noted, the facts summarized in our opinion are not disputed.

the backpay for the time he missed because of the suspension. According to Ros, during his negotiations with Rutkin there was never any discussion of Butler's harassment and discrimination claims (which were the subject of Butler's May 17, 2001 statement to Vons), nor did Rutkin ever tell Ros that Vons intended for Butler to "give up any rights he might have under state or federal laws against harassment or discrimination."

The Release Agreement was signed on May 24, 2001, and Butler was transferred to another store on May 28, 2001. The parties to the Release Agreement were Vons, UFCW Local 770 and Butler. According to Ros, his understanding of the Release Agreement was that Butler was waiving any rights he had under the collective bargaining agreement with Vons to pursue the Furman grievance, i.e., his suspension. According to Ros's declaration under penalty of perjury, Ros had no intention of waiving, and did not waive, any of Butler's rights under state or federal laws to pursue an action for harassment or discrimination.

Butler's deposition testimony is consistent with Ros's declaration. Butler testified that Ros and Rutkin called him jointly to inform him that they had resolved the Furman grievance. Butler testified: "Mr. Rutkin said that they had came [sic] to an agreement for me to go back to work. But he said he knows that I have made—I have filed, with Christy Deeley, a harassment charge. He said that this agreement that I will sign perturns [sic]—pertains to Tim Furman; Tim Furman only. [¶] I would not have signed if it pertained to anything about the harassment."

Butler filed his civil action for employment discrimination on March 21, 2003. The named defendants were Vons, Ziese and Simonton.[2] The operative first amended complaint sets forth four causes of action for violations of Government Code section 12940 (unlawful employment practices) and one cause of action for unfair business practices in violation of Business and Professions Code section 17200. The second and fourth causes of action are based on Vons's alleged failure to comply with the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) in failing to investigate conduct that violates FEHA and in failing to take prompt and effective remedial action for violations of FEHA. The complaint alleges that Butler obtained a right-to-sue letter from the Department of Fair Employment and Housing on March 22, 2002. Each of the causes of action is based on events that took place in Vons store No. 3138 prior to Butler's transfer from that store on May 28, 2001. The principal actors in the racially abusive

---

[2] Safeway, Inc., was also named. However, it appears that Butler never worked for Safeway, and Safeway was eventually dismissed, as was Simonton.

conduct are alleged to be Ziese and Simonton. The altercation with Furman, i.e., the Furman grievance, is not a subject of any of the causes of action.

The trial court initially denied Vons's motion for summary judgment on the ground that the Release Agreement did not "expressly mention" the FEHA claims, and that Butler only intended the Release Agreement to apply to the altercation he had with Furman. Thereafter, the court, on its own motion, reconsidered its ruling and, based on *Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299 [121 Cal.Rptr.2d 391, 48 P.3d 423] (*Jefferson*), granted Vons's motion for summary judgment.[3] In granting the motion, the court relied on the fact that the Release Agreement contained a provision that the parties waived their rights under Civil Code section 1542 (section 1542), which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." The provision in the Release Agreement that, according to the trial court, waived section 1542 states: "3. The Grievant [Butler] understands and agrees that as a condition of this agreement, the Grievant is waiving any rights he may have under Section 1542 of the California Civil Code. Section 1542 provides that 'A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.' With full awareness and understanding of the above provision, and after having an opportunity to confer with the Union. [*Sic.*] The Grievant hereby waives all rights which the above provision may provide."

Paragraph 4 of the Release Agreement states: "All rights under the collective bargaining agreement are hereby waived with respect to this matter." Paragraph 4 goes on to provide that the grievant "represents and warrants" that he has not filed any claim against Vons with any governmental agency, and agrees that he will not file any such claims "released in this agreement" with any "governmental agency or court" anytime hereinafter.

## DISCUSSION

### 1. *The Release Agreement Is Ambiguous*

Although the Release Agreement's paragraph 3 contains a waiver of section 1542, the Release Agreement, including paragraph 3, is ambiguous about the scope of that waiver.

---

[3] The second ruling was made five days after the first ruling.

The principal source of the ambiguity is that there are three parties to the Release Agreement. In addition to Vons and Butler, UFCW Local 770 is also a party. The reason for the union's participation in the Release Agreement as a party is that it was the union that filed, pursued and resolved the Furman grievance pursuant to its collective bargaining agreement with Vons. Thus, Local 770 was by no means a nominal party to the Release Agreement. Indeed, it is fair to say that Local 770 and Vons were the principal parties to the Release Agreement.

The fact that UFCW Local 770 is a party to the Release Agreement suggests that the Release Agreement is limited to matters dealing with the Furman grievance. Local 770's negotiation and execution of the Release Agreement reasonably suggests that Butler's personal interests, apart from the Furman grievance, are not subject to the Release Agreement. This is so because Local 770's standing was limited to negotiating the Furman grievance. Nothing suggests that Local 770 was authorized to negotiate and settle any claim or claims other than the Furman grievance. Viewed from Butler's perspective—and even from Vons's perspective—it is a reasonable construction of the Release Agreement that the agreement applied only to the Furman grievance. Thus, it is fair to read paragraph 3 as waiving section 1542 as to unknown or unsuspected claims *arising from the Furman grievance.* An example of such a claim is a tort claim that could arise from Butler's suspension.

This conclusion is also supported by the fact that paragraph 3 refers to Butler throughout as the "grievant." This, of course, makes sense, since Butler's sole status in the Release Agreement was that of the grievant in the labor dispute that arose from his suspension because of his argument with Furman. If Butler's role in the Release Agreement is limited to his being the "grievant" in the labor dispute, it is reasonable to conclude that the agreement itself, including paragraph 3, is limited to the Furman grievance. This does not have the effect of deleting paragraph 3; it limits the section 1542 waiver to unknown claims arising from the Furman grievance.

As a broad general proposition, it does not necessarily follow that the settlement of a labor grievance between a union and an employer is intended to extend to personal claims of the employee. Indeed, it is reasonable to conclude that the union and the employer resolved only the labor dispute. Thus, the circumstances that the principal parties to the Release Agreement were the union and Vons, and that Butler is referred to throughout in the agreement as the grievant, reasonably suggest that the intent of these parties

was nothing more or less than to resolve the Furman grievance, as well as unanticipated claims that could arise from that grievance.

We do *not* hold that paragraph 3 does not extend to claims other than claims arising from the Furman grievance. It may be that extrinsic evidence, introduced to resolve the ambiguity (see parts 2 and 3, *post*), will show a contrary intent. We only hold that the Release Agreement is ambiguous on this matter.

## 2. *Extrinsic Evidence Is Admissible to Explain the Ambiguity*

"Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." (Code Civ. Proc., § 1856, subd. (a).) However, this rule "does not exclude other evidence of the circumstances under which the agreement was made . . . or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement." (Code Civ. Proc., § 1856, subd. (g).) When, as here, the language used is fairly susceptible to one of two constructions, extrinsic evidence may be considered, not to vary or modify the terms of the agreement, but to aid the court in ascertaining the true intent of the parties. (*Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.* (2001) 89 Cal.App.4th 1221, 1236 [108 Cal.Rptr.2d 213].)

## 3. *The Scope of the Waiver of Section 1542 Is a Question of Fact*

Vons sets forth as an undisputed material fact that the Release Agreement "contains a full release of all claims, known and unknown, Butler had against Vons." In support, Vons cites Butler's deposition testimony in which he admits that he signed the Release Agreement. In addition, Vons supports this statement of undisputed fact with the text of paragraph 3 of the Release Agreement, and with paragraph 9 of the Release Agreement. Paragraph 9 states in substance that the Release Agreement supersedes any and all oral agreements. In sum, Vons relies on the terms of the Release Agreement for the proposition that it is undisputed that Butler released his discrimination/harassment claim under paragraph 3 of the Release Agreement.

Given that the Release Agreement is ambiguous on the issue of the scope of the waiver of section 1542, we turn to extrinsic evidence that bears on the intention of the parties regarding this issue. We have such extrinsic evidence in the declaration of union business agent Ros, and in Butler's testimony. Both Ros and Butler confirm one reasonable interpretation of the Release Agreement, which is that UFCW Local 770 and Vons intended by the Release

Agreement to resolve and settle only the Furman grievance. Ros is particularly clear in stating that he and Vons's representative Rutkin had no intention of addressing, and did not address, Butler's harassment and discrimination claims or, put differently, that the only claim they intended to address and did address was the Furman grievance.

■ This is not to say that there is no evidence that contradicts Ros and Butler on this question. It may well be that there is such evidence; the record as it stands now does not reflect such contradictory evidence. Be that as it may, it is, at a minimum, a triable question of fact whether Butler, as represented by union agent Ros, and Vons agreed that the scope of the section 1542 waiver extended, or did not extend, to Butler's harassment and discrimination claims.

Our conclusion that, in this case, the scope of a waiver of unknown claims is a question of fact is by no means unprecedented. (E.g., *Casey v. Proctor* (1963) 59 Cal.2d 97, 110 [28 Cal.Rptr. 307, 378 P.2d 579]; *Mitchell v. Union Central Life Ins. Co.* (2004) 118 Cal.App.4th 1331, 1341–1342 [13 Cal.Rptr.3d 732]; *Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398, 411 [163 Cal.Rptr. 711]; *DuBois v. Sparrow* (1979) 92 Cal.App.3d 290, 301 [154 Cal.Rptr. 717]; *Grebe v. McDaniel* (1968) 265 Cal.App.2d 901, 903 [71 Cal.Rptr. 662].)

We conclude by observing that this case is distinguishable from *Jefferson*, *supra*, 28 Cal.4th 299, the authority on which the trial court relied in granting the motion for summary judgment.

In *Jefferson*, the plaintiff, a teacher's assistant, was employed in that capacity by the California Youth Authority from September 1992 to February 1994. She filed a workers' compensation claim in March 1994. The claim was based on sexual harassment she had experienced in the workplace. In October 1994, the plaintiff filed a sex discrimination claim with the Department of Fair Employment and Housing, which issued a right-to-sue letter in October 1995. The plaintiff settled her workers' compensation claim against the California Youth Authority on July 9, 1996, receiving over $77,000. The settlement agreement, which was in a form approved by the Workers' Compensation Appeals Board, contained a provision that stated that " 'all rights under Sections [*sic*] 1542 of the Civil Code of California are hereby expressly waived.' " (*Jefferson*, *supra*, 28 Cal.4th at pp. 302–303.)

The Workers' Compensation Appeals Board approved the settlement on August 2, 1996. The plaintiff filed a civil action against the California Youth Authority and the individual who had harassed her on August 23, 1996. After various other claims were dismissed, the only remaining cause of action

alleged sex discrimination in violation of FEHA; this cause of action was based on the same events that had given rise to the workers' compensation claim, and alleged the same injuries. (*Jefferson, supra,* 28 Cal.4th at p. 303.)

After noting the general principle that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents (*Jefferson, supra,* 28 Cal.4th at p. 303), the court in *Jefferson* concluded that the general release in that case barred the plaintiff's FEHA civil action. The court held: "We conclude that the broad settlement language at issue here is enforceable as written. Two points in particular support our conclusion: (1) the parties included an attachment in their settlement agreement that made clear their intent to settle matters outside the scope of workers' compensation; and (2) Jefferson offered no extrinsic evidence establishing the parties' intent to exclude her FEHA claim from the settlement." (*Jefferson, supra,* 28 Cal.4th at p. 304.) Both of these factors are at issue in this case.

As far as the first prong of the court's decision in *Jefferson* is concerned, we have noted that, in the case at bar, it is far from clear that paragraph 3 of the Release Agreement was intended to settle matters outside the scope of the Furman grievance. The most that can be said on this issue is that, construing the entire Release Agreement as well as paragraph 3 thereof, it is ambiguous what the intended scope of the section 1542 waiver was. This is not true of the release and waiver in *Jefferson*, which the court found referred unambiguously to civil claims other than the workers' compensation claim. (*Jefferson, supra,* 28 Cal.4th at pp. 306–307.)

The second prong of the *Jefferson* decision also differs strongly from the case at bar. Ros's declaration and Butler's testimony that all aspects of the Release Agreement, including the section 1542 waiver, were limited to the labor grievance are not unreasonable, in light of the text of the Release Agreement itself and the circumstances that led to that agreement. This is in sharp distinction to *Jefferson* where there was no extrinsic evidence that the parties intended to limit the release to the workers' compensation claims.

In short, we conclude that *Jefferson*, while relevant and helpful in establishing an analytical framework, is distinguishable.

Finally, we reject as entirely inappropriate the footnoted aside in Butler's reply brief that "we are left to wonder" whether the trial court "simply yielded to the understandable temptation of easing its crowded docket" when it entered a new order granting the motion, based on the *Jefferson* decision. That said, we commend the trial court for its openness to revisit its earlier decision, when it appeared to the court that its initial decision was incorrect.

## DISPOSITION

The judgment is reversed. Appellant and respondent are to bear their own costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

A petition for a rehearing was denied July 24, 2006.