Filed 12/3/20  Razon v. Southern California Permanente etc. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| REINIER RAZON, | B294103 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC656671) |
| v. | |
| SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, | ORDER MODIFYING OPINION (No change in the appellate judgment) |
| Defendant and Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on November 17, 2020 be modified as follows:

On page 1, delete counsel listing for Defendant and Respondent and insert the following in its place:

Atkinson, Andelson, Loya, Ruud & Romo, Joseph E. Pelochino, Jonathan D. Andrews; Andrews Lagasse Branch + Bell, Jonathan D. Andrews, Joseph E. Pelochino and Ani Mazmanyan for Defendant and Respondent.

There is no change in the appellate judgment.

_____

PERLUSS, P. J.   FEUER, J.   RICHARDSON, J.*

---

\*  Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 11/17/20  Razon v. Southern California Permanente etc. CA2/7 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| REINIER RAZON,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP,<br><br>Defendant and Respondent. | B294103<br><br>(Los Angeles County Super. Ct. No. BC656671) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

The Law Office of Caesar S. Natividad and Caesar S. Natividad for Plaintiff and Appellant.

Andrews Lagasse Branch + Bell, Jonathan D. Andrews, Joseph E. Pelochino and Ani Mazmanyan for Defendant and Respondent.

————————

Reinier Razon sued his former employer Southern California Permanente Medical Group (SCPMG) for disability discrimination, failure to accommodate and failure to engage in the interactive process in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).  The trial court granted SCPMG's motion for summary judgment and entered judgment in favor of SCPMG, ruling Razon's lawsuit was barred by his written release of all claims relating to his employment with SCPMG.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Razon's Employment and Partial Disability Leave*

Razon began working for SCPMG at its Kaiser Sunset location as a clinical laboratory scientist on a part-time basis in January 2014.  He was promoted to overnight manager in January 2016, supervising a staff of clinical laboratory scientists and phlebotomists.  Part of Razon's responsibilities included interacting with union stewards representing the employees Razon supervised.

On May 17, 2016 Razon was involved in a dispute with Darren Wallace, the union steward assigned to the clinical laboratory scientists under Razon's supervision.  According to Razon, Wallace assaulted him.  Razon was treated two days later at the Kaiser emergency room for anxiety and diagnosed with "emotional stress reaction," which Razon believed was due to his encounter with Wallace.[1]

---

[1]     Razon was diagnosed on May 30, 2016 as suffering from "anxiety disorder, uncontrolled symptoms," and on June 7, 2016 as suffering from "adjustment disorder with mixed anxiety and depressed mood."

2

On June 6, 2016 Razon was placed on a partial disability leave of absence. The doctor's note permitted Razon to return to work but specifically advised he could not work at the Kaiser Sunset main laboratory, which was where Wallace worked. No other work restrictions were listed. Razon thereafter submitted a series of doctor's notes extending his partial disability leave through August 2017. First, on August 9, 2016 the work restriction was extended to the entire Kaiser Sunset facility, not just the main laboratory, but otherwise authorized Razon's return to work. Next, on September 20, 2016 the doctor wrote, "Patient is adamant that he will not return to work at Kaiser Sunset due to safety concerns so anticipate this restriction may become permanent." Beginning with the doctor's note of November 17, 2016, the work restriction stated Razon could not work at the same Kaiser facility as Wallace or be a supervisor. That same restriction appeared in subsequent doctor's notes through August 2017.

Beginning in August 2016 Razon spoke repeatedly with Leticia Cervantes, Kaiser's transitional work coordinator, who was responsible for evaluating Razon's request to transfer from the Kaiser Sunset facility where Wallace was assigned. Cervantes explained to Razon that under Kaiser's policies temporary work restrictions are only accommodated within the employee's current medical center assignment. None of the doctor's notes submitted by Razon, however, ever indicated his work restrictions had become permanent. Razon was advised to apply directly for open positions at other facilities within the Kaiser system.

### 2. *Razon's FEHA Lawsuit*

On April 6, 2017 Razon sued SCPMG, alleging, as a result of Wallace's assault, he had developed a disability "consisting of fear and inability to work at the Sunset Kaiser Permanent[e] Hospital." Razon further alleged he had requested that SCPMG reassign him to another location in the Kaiser Permanente system, but that request was denied. In addition, the complaint continued, Razon's several applications for employment as an area laboratory manager or laboratory scientist at other Kaiser Permanente locations were denied "because of his disability and/or his worker's compensation claim." Razon asserted three FEHA causes of action based on his "ongoing qualifying disability of fear of working at the Kaiser Pemanent[e] Sunset facility": "discrimination based on disability"; "failure to provide a reasonable accommodation"; and "failure to engage in an interactive discussion to provide reasonable accommodations."

SCPMG answered the complaint on May 26, 2017 with a general denial and asserted 29 affirmative defenses.

### 3. *Settlement of the Workers' Compensation Claim and Razon's Voluntary Resignation from SCPMG*

Razon filed a workers' compensation claim in May 2016 for injuries (stress and anxiety) arising from his encounter with Wallace. That claim was pending when he filed his lawsuit against SCPMG in April 2017.

In March 2018 Razon, acting through counsel, settled his workers' compensation claim for $45,000, as reflected in a standard, preprinted compromise and release form signed by Razon on March 14, 2018. As a condition of that settlement Razon also signed on the same date a voluntary resignation form

4

letter provided to Razon's attorney by the claims examiner acting on behalf of SCPMG.

The voluntary resignation letter signed by Razon declares his intention to voluntarily resign from SCPMG, to decline modified or alternate employment with SCPMG or other Kaiser entities and not to apply for reemployment at Kaiser. The document also states it "releases Kaiser from any and all claims, known or unknown, which may exist at the time of execution of this Agreement, and waives any claim to monetary damages that may arise from claims specifically to include, but not limited to, all losses, liabilities, damages, and causes of action arising directly or indirectly out of the employer-employee relationship. This agreement specifically includes causes of action under Title VII of the Civil Rights Act of 1964 (race, color, religion, sex and national origin discrimination); the Americans with Disabilities Act; 29 USC section 62 (age discrimination). However, this list is expressly understood by the parities [*sic*] not to be all-inclusive."[2]

4. *The Summary Judgment Motion and the Court's Ruling*

SCPMG moved on May 4, 2018 for summary judgment, or in the alternative summary adjudication, arguing Razon did not have a qualifying disability within the meaning of FEHA,

---

[2] Immediately above the line for Razon's signature the document recited, "By signing this agreement I acknowledge that I have read this agreement in its entirety, I understand it, I have been given an opportunity to consult with or obtain representation from an attorney in connection with this Agreement, and consent to all of the agreement provisions are given freely, voluntarily and with full knowledge and understanding of the agreement's contents."

SCPMG had engaged in the interactive process with Razon and provided him reasonable accommodations and the March 14, 2018 release signed by Razon barred all claims asserted in the lawsuit.

With respect to the release contained in the voluntary resignation letter, in his opposition papers Razon argued, in part, SCPMG had forfeited the defense by failing to allege it as an affirmative defense in its answer to the complaint. He also asserted the release did not cover his FEHA claims, which were known to SCPMG in March 2014 but not specifically identified in the release, and the resignation letter and release were unenforceable because they lacked independent consideration and were, therefore, unconscionable.

After briefing and oral argument the court granted SCPMG's motion for summary judgment, ruling Razon's action was barred in its entirety by the release he had signed. In its written order the court found the affirmative defense of waiver, pleaded in SCPMG's answer, was sufficient to permit SCPMG to assert the release as a defense to the lawsuit. It also explained the case law cited by Razon only requires a release executed as part of a workers' compensation settlement to make reference to other civil claims generally; there is no requirement that claims be specifically identified to be covered by the release. Finally, the court found, by Razon's own admission, his voluntary resignation from SCPMG and the release of all employment-related claims were components of the workers' compensation settlement, thus providing any necessary consideration.

Judgment in favor of SCPMG was entered October 2, 2018. Razon filed a timely notice of appeal.

6

## DISCUSSION

### 1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); see *B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 178.) A defendant may move for summary judgment on the ground there is an affirmative defense to the action. (Code Civ. Proc., § 437c, subds. (o)(2), (p)(2); see *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 343.) Once the defendant establishes all elements of the affirmative defense, the burden shifts to the plaintiff to show there is one or more triable issues of material fact regarding the defense. (*Shiver v. Laramee* (2018) 24 Cal.App.5th 395, 400; *Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484-1485.)

We review a grant of summary judgment de novo (*Samara v. Matar* (2018) 5 Cal.5th 322, 338) and, viewing the evidence in the light most favorable to the nonmoving party (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618), decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Hampton v. County of San Diego, supra,* 62 Cal.4th at p. 347; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

### 2. *The March 2018 Release Barred Razon's FEHA Claims*

Although abandoning his claim the affirmative defense of release was not properly pleaded in SCPMG's answer, Razon repeats the other challenges to the enforceability of the release he advanced in the trial court. None has merit.

7

a. *Voluntary or a condition of the settlement*

Initially, in an argument we have some difficulty understanding, Razon contends there is a triable issue of fact whether his resignation was voluntary or a condition of the workers' compensation settlement. Razon's argument presents a false dichotomy: While in the abstract he perhaps did not want to end his employment with SCPMG or Kaiser, Razon admitted in his declaration in opposition to summary judgment that he agreed to, and signed, the March 14, 2018 voluntary resignation letter, which was one of the settlement documents he had received from the attorney representing him in the workers' compensation proceeding.[3] There is no disputed issue of fact: The evidence unequivocally established the resignation and release were made voluntarily and a condition of the settlement.

b. *Consideration*

Next, Razon contends there is a triable issue of fact whether the release was supported by consideration. This argument is doubly flawed. First, consideration is not necessary for a written release to be enforceable. (Civ. Code, § 1541 ["[a]n obligation is extinguished by a release therefrom given to the debtor or the released party by the creditor or releasing party,

---

[3]     In his declaration Razon also insisted he did not intend by signing the letter to release his FEHA claims. That undisclosed intent, however, is irrelevant to our interpretation of the release. (*Otay Land Co., LLC v. U.E. Limited, L.P.* (2017) 15 Cal.App.5th 806, 855 ["'[a]lthough the intent of the parties determines the meaning of the contract . . . , the relevant intent is "objective"— that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent"]; see *Zissler v. Saville* (2018) 29 Cal.App.5th 630, 644; *G & W Warren's, Inc. v. Dabney* (2017) 11 Cal.App.5th 565, 575.)

upon a new consideration, or in writing, with or without new consideration"].)[4] Second, as discussed, Razon's admission his resignation from SCPMG and his release of employment-related claims were a condition of the workers' compensation settlement establishes any necessary consideration. To be sure, as Razon points out, the compromise and release form stated $45,000 was being paid to settle Razon's claims for the injuries at issue in the workers' compensation proceeding. Nonetheless, as Razon acknowledged, the compromise and release of the workers' compensation claims and the resignation and release of all other employment-related claims were part of a single global settlement package; and his execution of the voluntary letter of resignation was a condition for resolution of the workers' compensation claims. SCPMG, which self-insured for workers' compensation claims, was not obligated to agree to pay Razon $45,000 as provided in the form workers' compensation compromise and release. Its agreement to do so conferred a benefit on Razon that Razon had no right to receive, one of the statutory definitions of consideration. (See Civ. Code, § 1605 ["[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not

_____

[4] Razon asserts we should disregard this well-established principle of law because SCPMG argued in the trial court the release was supported by consideration without any reference to Civil Code section 1541, and the order granting the motion was based on a finding of consideration. However, we may affirm summary judgment on a ground not relied upon by the trial court (Code Civ. Proc., § 437c, subd. (m)(2)), and Razon fails to offer any reason Civil Code section 1541 would not apply to the March 14, 2018 release.

9

lawfully entitled, . . . as an inducement to the promisor, is a good consideration for a promise"].)[5]

c. *Mutual assent*

Noting that SCPMG did not sign the voluntary resignation letter, Razon contends there is a triable issue of fact whether SCPMG consented to the resignation and release—that is, whether there existed the mutual assent required for contract formation.[6]  In determining the existence of mutual consent, courts look to the objective, outward manifestations or expressions of the parties, that is, "'the reasonable meaning of

---

[5]     Although, as Razon notes, parol evidence is inadmissible to vary or contradict the clear and unambiguous terms of a written, integrated contract (Code Civ. Proc., § 1856, subd. (a); *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126), the parol evidence rule does not exclude evidence of "the circumstances under which the agreement was made or to which it relates, as defined in Section 1860."  (Code Civ. Proc., § 1856, subd. (g).)  Code of Civil Procedure section 1860, in turn, provides, "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the Judge be placed in the position of those whose language he is to interpret."

[6]     While mutual assent is necessary for an enforceable settlement agreement that includes a release (see, e.g., *Timney v. Lin* (2003) 106 Cal.App.4th 1121, 1126; *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811), it is by no means clear that, to be effective, a written release, which, as discussed, is enforceable without consideration, needs the consent of a released party expressly identified in the document.  (Cf. Rest.2d Contracts, § 284, subd. (1) ["[a] release is a writing providing that a duty owed to the maker of the release is discharged immediately or on the occurrence of a condition"].)

10

their words and acts, and not their unexpressed intentions or understandings.'" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208.)  Here, there is no question that Razon gave his assent to the voluntary letter of resignation; he has admitted he did.  Nor is there any material issue of fact regarding SCPMG's consent.  The evidence before the trial court on summary judgment established the letter was provided by SCPMG's workers' compensation claims representative to Razon's counsel during their negotiations of the workers' compensation settlement.  SCPMG's representative required Razon's agreement to resign his employment and release his employment-related claims as a condition of the settlement.  SCPMG and other Kaiser-related entities are expressly identified as the beneficiaries of the resignation and release in the document itself.  The outward manifestation of SCPMG's approval of the resignation and release could not be any clearer.

> d.  *Separate documents*

Citing *Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299 (*Jefferson*) and *Claxton v. Waters* (2004) 34 Cal.4th 367 (*Claxton*), Razon argues the release set forth in his voluntary resignation letter is enforceable only if the letter was attached to the preprinted compromise and release form used to resolve Razon's workers' compensation claims.  Neither case establishes such a rule.

In *Jefferson* the Supreme Court held a compromise and release executed on a preprinted form in a workers' compensation proceeding that expressly released "all claims and causes of action" relating to an injury that also included an attachment establishing the parties' intent to include civil claims within the scope of the release barred FEHA claims relating to the same

11

events that resulted in the injury. (*Jefferson*, *supra*, 28 Cal.4th at p. 301.) The Court explained that at the time of the workers' compensation settlement the plaintiff "had already filed a complaint with the DFEH and therefore not only contemplated the possibility of FEHA remedies but was also actively pursuing those remedies. Therefore, when she released 'all claims and causes of action' relating to the injury, she knew, or should have known, that her FEHA claim would fall within the scope of that broad language." (*Id*. at p. 305.)

In *Claxton* the Supreme Court held an injured worker executing the standard preprinted form used to settle workers' compensation claims, without more, does not release causes of action that are not exclusively subject to the workers' compensation law or within the scope of that law. (*Claxton*, *supra*, 34 Cal.4th at p. 370.) The Court further held that evidence extrinsic to the language of the preprinted workers' compensation compromise and release form could not be used to establish the parties intended the preprinted release to extend to claims outside the workers' compensation system. (*Id*. at p. 377.)

Emphasizing that those additional causes of action "may be the subject of a separate settlement and release" (*Claxton*, *supra*, 34 Cal.4th at p. 370), the *Claxton* Court referred to the facts in *Jefferson* to explain why this rule was not unfair to the parties: "It would be a simple matter for parties who have agreed to settle not only workers' compensation claims but also claims outside the workers' compensation system to execute another document expressing that agreement. Thus, execution of the mandatory standard preprinted compromise and release form would only establish settlement of the workers' compensation claims; the intended settlement of claims outside the workers' compensation

12

system would have to be reflected in a separate document. (See *Jefferson, supra,* 28 Cal.4th 299 [attachment to workers' compensation form documented release of claims outside of workers' compensation]; *Delaney* [*v. Superior Fast Freight* (1993)] 14 Cal.App.4th [590,] 600 [parties should augment workers' compensation form to expressly refer to release of claims outside of workers' compensation]".) (*Claxton,* at p. 378.)

In an effort to fashion a rule that any intended release of claims outside the workers' compensation system must be attached to the preprinted workers' compensation form, not set forth in a separate document, Razon emphasizes that in both *Jefferson* and *Claxton* the general release language was, in fact, included in such an attachment. While true, neither case—nor any other authority cited by Razon—established attachment as a requirement. To the contrary, the *Claxton* Court expressly recognized release of the non-workers' compensation claims could be effected through a separate document, independent of the workers' compensation preprinted form. (*Claxton, supra,* 34 Cal.4th at pp. 370, 378.) That is exactly what occurred here.

e. *Express reference to the FEHA claims*

Finally, Razon argues the absence of any express reference to his FEHA claims in the release creates a triable issue of fact whether the lawsuit, pending at the time the release was executed, was included within its scope. The Supreme Court in *Claxton* expressly rejected the need for the specificity that Razon suggests: "As is true with settlements in civil actions generally, the separate document need not identify precise claims; it would be sufficient to refer generally to causes of action outside the

13

workers' compensation law 'in clear and non-technical language.'" (*Claxon*, *supra*, 34 Cal.4th at p. 378.)[7]

The release language in Razon's voluntary resignation letter clearly encompasses causes of action outside the workers' compensation law and, even more specifically, all claims arising directly or indirectly from his employment at SCPMG including those involving disability discrimination. Absent any admissible extrinsic evidence that Razon intended to exclude his FEHA claims from this broad, all-inclusive language, interpretation of the release remained a question of law. (See *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395; *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439 ["[i]t is solely a judicial function to interpret a written contract unless the interpretation turns upon the credibility of extrinsic evidence, even when conflicting inferences may be drawn from uncontroverted evidence"]; *Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 507 ["in the absence of any conflict in extrinsic evidence presented to clarify an ambiguity," written agreements are interpreted de novo].) The trial court properly interpreted that language to bar Razon's FEHA lawsuit.

---

[7] Razon mistakenly quotes language from *Lopez v. Sikkema* (1991) 229 Cal.App.3d 31 and *Delaney v. Superior Fast Freight*, *supra*, 14 Cal.App.4th 590 to argue specific reference to his pending FEHA case was required for the release to be effective. Both of those cases were analyzing the sufficiency of extrinsic evidence to establish the preprinted workers' compensation form release encompassed the plaintiff's pending civil case. Both were expressly disapproved on that point in *Claxton*, *supra*, 34 Cal.4th at page 379, footnote 2.

## DISPOSITION

The judgment is affirmed. SCPMG is to recover its costs on appeal.


PERLUSS, P. J.


We concur:


FEUER, J.


RICHARDSON, J.*


---

*   Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15