Filed 8/16/21  Steger v. CSJ Providence St. Joseph Medical Center CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| JASON STEGER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CSJ PROVIDENCE ST. JOSEPH MEDICAL CENTER,<br><br>    Defendant and Respondent. | B304043<br><br><br>(Los Angeles County<br><br>Super. Ct. No. BC691050) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Ralph C. Hofer, Judge.  Affirmed.

Lindemann Law Firm, Blake J. Lindemann and Donna R. Dishbak for Plaintiff and Appellant.

Fraser Watson & Croutch, Stephen C. Fraser, Daniel K. Dik and Karine Mkrtchyan for Defendant and Respondent.

_____

Appellant Jason Steger appeals from a judgment entered in favor of Respondent CSJ Providence St. Joseph Medical Center ("the Hospital") granting the Hospital's motion for summary judgment on Steger's complaint alleging medical malpractice. On appeal, Steger asserts in his opening and reply briefs: (1) the trial court erred in requiring him to present expert evidence on the issue of ostensible agency; and (2) the Hospital failed to demonstrate that the doctors who treated him were independent contractors, and did not establish that the treatment he received met the standard of care. In supplemental briefing invited by this court, Steger contends there are material issues of fact regarding whether the doctors were agents or ostensible agents of the hospital. Alternatively, he asserts that because the trial court never ruled on whether the doctors who treated him were the Hospital's agents or ostensible agents, he did "not have an adequate opportunity to present evidence or conduct discovery" on the issues and thus he requests an additional opportunity to conduct discovery and litigate the agency issues in the trial court. As we shall explain, the Hospital satisfied its initial burden to present evidence that the doctors were independent contractors and not agents or ostensible agents of the Hospital. Steger effectively abandoned any theory of actual agency, and he had a full opportunity to address ostensible agency in the trial court proceedings, but he failed to present a triable issue of fact on that issue. Thus, the court properly granted the Hospital's motion, and therefore, we affirm the judgment.

2

## FACTS AND PROCEDURAL BACKGROUND

### A. Allegations of the Complaint

In January 2018, Steger filed a complaint alleging one cause of action for medical malpractice against the Hospital, Dr. John Kasher and Dr. James Kao (collectively "the Doctors"), and other physicians.[1] Steger's complaint alleged that in late October 2016, he was admitted to the Hospital complaining of abdominal pain. While there, the Doctors negligently performed a procedure that perforated his colon. As a result, Steger alleged that he went into septic shock and suffered other injuries that required unnecessary procedures, including the removal of his colon. He further claimed that before the surgery to remove his colon, the Doctors failed to obtain his informed consent for the procedure. Steger also alleged that the Doctors misdiagnosed his condition as ulcerative colitis and failed to refer him to an expert to receive appropriate care. Steger pled that all of the defendants were individually liable and vicariously liable for the conduct of their co-defendants based on agency.

The Hospital answered the complaint, denied Steger's allegations, and asserted affirmative defenses, including that its conduct complied with the governing standard of care, lack of causation, and absence of any agency relationship between the Hospital and the Doctors.

---

[1] Prior to the summary judgment proceedings, Steger resolved the claims against the other physicians named as defendants in his complaint.

## B. Motion for Summary Judgment and Supporting Evidence

In June 2019, the Hospital filed a motion for summary judgment on several separate grounds, including that the care and treatment the Hospital and its employees provided to Steger complied with the standard of care in the medical community and did not cause Steger's injuries.[2] The Hospital also argued that it was entitled to summary judgment because it was not ostensibly liable for the actions or inactions of the Doctors because they were independent contractors and were not the Hospital's employees or agents. The Hospital maintained that based on the notices that Steger signed when he was admitted to the Hospital and before the procedure during which he claimed he was injured, Steger knew that the Doctors who treated him were independent contractors, and thus, the Hospital was not liable for their actions.

_____

[2] The Doctors separately filed a motion for summary judgment, arguing that they were not negligent in treating Steger. They supported their motion with a declaration from a medical expert who opined that the care they provided was appropriate and did not injure Steger. In opposition to the Doctors' motion, Steger presented the expert declaration of Dr. Tawhid Gazi, a gastroenterologist, who opined that the treatment provided by the Doctors fell below the requisite standard of care and harmed Steger. In August 2019, the trial court denied the Doctors' summary judgment motions, finding that Steger had raised a triable issue of fact as to the negligent conduct of the Doctors.

4

In support of the motion, the Hospital submitted portions of Steger's deposition and his medical records. Steger's records disclosed that ten years before the events giving rise to his claim, Steger's doctors at Kaiser Permanente had diagnosed him with ulcerative colitis. The records also showed that Steger had a history of acute, chronic colitis, ulcerative colitis, and left-sided colitis with rectal bleeding. Steger's primary care doctor referred him to the Hospital and the Doctors, who operated a private practice as gastroenterologists at Lakeside Community Healthcare, which contracted to provide services to the Hospital. Between September 2015 and late October 2016, the Doctors treated Steger for his chronic colitis.[3]

The records further showed that on October 25, 2016, Steger, then 39 years old, came to the Emergency Department at the Hospital with complaints of abdominal pain and constipation. He also explained that his pain was moderate but was getting worse. He reported having blood-tinged loose stool several times a day. At the time, Steger's condition was stable and his vital signs were within a normal range. His records also disclosed that when he was admitted to the Hospital, he was coherent, alert, and speaking in complete sentences, expressing frustration about his pain and condition.

Following an examination and review of his medical history, the emergency medicine doctor diagnosed Steger with ulcerative colitis with rectal bleeding. The doctor recommended

---

[3] The record discloses that prior to his treatment at the Hospital in October 2016, the specific hospital stay identified in the complaint, Steger was admitted for treatment at the Hospital from July 31, 2016 to August 9, 2016 for the same condition.

5

that Steger be admitted to the Hospital and that Steger undergo additional testing.

After Steger was admitted, codefendant Dr. Kao had a surgical consultation with Steger.  At the time, Steger refused to undergo surgery or take antibiotics because he wanted to wait for further test results.  Thereafter, Steger underwent a sigmoidoscopy performed by codefendant Dr. Kasher.  The sigmoidoscopy could only be partially completed because of the severity of the colitis and the risk of perforation of the colon.  The procedure confirmed that Steger had severe colitis throughout his rectum and sigmoid colon, including deep ulcers and bleeding.  It was recommended that Steger remain in the Hospital to receive treatment and to rule out other causes for Steger's conditions.  The Doctors further recommended that if the therapies were ineffective, a surgical intervention, including removing part or all of the colon, be considered.

The day after the sigmoidoscopy, Steger began to complain of worsening pain in his abdomen and chest.  Follow-up evaluation and testing revealed that his colon was perforated and that he had developed peritonitis.  Steger underwent immediate surgery, which resulted in, among other various procedures, the removal of his colon.  His post-operative results revealed diagnosis, including inflammatory bowel disease, consistent with Crohn's disease, extensive ulceration, and acute serositis.  Steger remained in the ICU and was subsequently diagnosed with sepsis, among other conditions.  After further treatment, Steger's condition improved.  In December 2016, he was released from the Hospital.

In addition to Steger's medical records and deposition testimony, the Hospital also supported its motion for summary

judgment with the declaration of expert gastroenterologist Jacques Van Dam, M.D. Dr. Van Dam opined that based upon his knowledge and training, and his review of Steger's medical records and deposition testimony, the care and treatment provided to Steger by the Hospital and its employees complied with the standard of care in the medical community. Dr. Van Dam also stated that the Hospital's nursing personnel appropriately treated Steger and acted appropriately at all times, including carrying out the directives of Steger's doctors. Dr. Van Dam observed that the nature and the scope of the procedures performed on Steger were determined by the physicians and not the nursing or non-physician staff. He further opined that nothing the Hospital or its employees did (or did not do) caused Steger's injuries, including his perforated colon.

The Hospital also submitted the declaration of Susan Parrini, the Director of Professional Staff Services at the Hospital. She stated that the Doctors were independent contractors and not employees or agents of the Hospital. She stated that the Doctors had staff privileges related to their practice at Lakeside Community Healthcare. They also had limited permission to use certain facilities located on the Hospital's premises.

In support of its claim that Steger knew that the Doctors were independent contractors and not the Hospital's agents or employees, the Hospital submitted the "Conditions of Admission" that Steger initialed and signed when he was admitted to the Hospital on October 25, 2016, and the "Authorization for and Consent to Surgery Special Diagnostic or Therapeutic Procedures" (the "Authorization") that Steger signed before he

7

underwent the sigmoidoscopy on October 27, 2016.  The Conditions of Admission provided:

> "PHYSICIANS ARE INDEPENDENT CONTRACTORS: The undersigned recognizes that all physicians, physician assistants, and surgeons furnishing service to the patient, including the radiologist, pathologist, anesthesiologist, emergency room physician, physician assistants, and the like, are independent contractors and are not employees or agents of the hospital."

The Authorization form provided:

> "I understand that the person or persons in attendance at such operations or procedures, as indicated above,[4] for the purpose of administering anesthesia, and the person or persons performing other specialized professional services, such as radiology, pathology, and the like, are not the agents, servants or employees of the above named medical center or of the above named physician and surgeon, but are independent performing specialized services on my behalf."

---

[4] Codefendant Dr. Kasher was identified on the Authorization form as performing the procedure.

8

At his deposition, Steger identified his signature on the Conditions for Admission and his initials next to the specific condition concerning the Doctors' status as independent contractors. Steger testified that he had a vague recollection of the form but did not remember reading it; he speculated that he could not recall reading it because "maybe" he was worried about other things going on in his body at the time. He did, however, concede it would have been his habit and custom to read and review the document unless he was incoherent. Steger also identified his signature on the Authorization form.[5]

## C. Opposition to Motion for Summary Judgment and Supporting Evidence

Steger opposed the motion for summary judgment. He argued that triable questions of fact existed requiring a trial. Steger clarified that he did not seek to hold the Hospital directly liable for the conduct of its nursing staff and non-physician employees and was not opposing the Hospital's motion on that basis. Steger also took the position that it was unnecessary for him to submit an expert declaration in opposition to the Hospital's motion on the issue of negligence because he did not claim that the Hospital's nursing staff and employees were negligent and also because the court had already found that a

---

[5] When previously admitted to the Hospital on July 31, 2016, Steger signed another Conditions of Admission form containing an advisement paragraph titled "PHYSICIANS ARE INDEPENDENT CONTRACTORS" that contained identical language to the form signed upon his admission in October 2016.

9

triable issue of fact existed as to the Doctors' negligence in connection with the Doctors' motion for summary judgment. Instead, Steger argued that his claim against the Hospital was premised on the theory of vicarious liability—that the Doctors who committed the malpractice were ostensible agents of the Hospital, and thus the Hospital was vicariously liable for their conduct.

Steger further asserted that a triable issue existed on the application of ostensible agency. He argued that when a hospital provides "emergency care," it is precluded, as a matter of law, from defending itself based on a claim that it provided notice in admission documents about the doctor's status as an independent contractor. In addition, he contended that when he was admitted to the Hospital, he was in no condition to understand the Conditions of Admission. Steger also maintained that the Authorization form he signed before his sigmoidoscopy procedure was ambiguous as to whether it provided notice of the independent contractor status of everyone involved in the procedure, including the Doctors, or only the other healthcare professionals providing professional services during the procedure.

In support of his opposition, Steger submitted his declaration in which he stated that he was never told that the Doctors were independent contractors. He believed the Doctors were the Hospital's agents or employees based on statements of his primary care physician, who referred him to the Doctors and the Hospital, and on statements of the Hospital's clinic's registration clerk that his health insurance plan required that he be treated by Hospital employees, and because the Doctors' practice was located on the Hospital's premises, and the Doctors

10

used the Hospital's equipment. Steger also declared that he was "not of the right state of mind" to focus on the notices "based on the medication I was taking, my conditions, and my symptoms."

Finally, in the alternative, Steger argued that the court should grant a continuance of the motion so that he could obtain additional discovery on the Hospital's relationship with the Doctors.[6]

### D. Reply, Evidentiary Objections, and Trial Court Ruling

The Hospital filed a reply, arguing that the existence of ostensible agency could be decided as a matter of law, that the notices in the Conditions of Admission and Authorization form were valid and apprised Steger of the Doctors' status as independent contractors and that Steger had failed to raise a triable issue of fact as to the notices' validity or his capacity to read and understand them. The Hospital pointed out that Steger failed to present expert testimony on the issue of whether the Hospital and its personnel committed malpractice and opposed the request for a continuance. The Hospital also filed objections to Steger's declaration on various grounds, including hearsay, and that his statements contradicted his deposition testimony.

Several days before the hearing on the motion for summary judgment, the court issued its tentative ruling disclosing its intent to grant the Hospital's motion. The court ruled that Dr.

---

[6] Steger's counsel did not support the request for a continuance with a declaration describing the basis for requesting the continuance—what evidence he expected to develop or the need for additional discovery.

11

Van Dam's declaration established that the Hospital's conduct was within the applicable standard of care, and thus, the burden shifted to Steger to raise triable issues of material fact. The court further observed that Steger had failed to submit any expert medical testimony in opposition to the motion. The court determined that Steger's assertion that the court had previously found a material dispute of fact as to whether Dr. Kasher and Dr. Kao were negligent "only goes so far here," because Steger "in opposition to this motion has failed to offer any expert medical evidence establishing that [the Doctors' conduct] fell below the standard of care or [that they] engaged in acts or omissions which were the medical cause of [Steger's] injuries." The court noted that the Hospital's reply pointed out that "there is no evidence before the moving defendant to challenge with respect to these issues, even if plaintiff were to successfully raise issues with respect to ostensible or some other theory of agency." The court concluded that in the absence of such evidence, "triable issues have not been raised, and the motion is granted."

The court also denied Steger's request for a continuance because he failed to support it with a declaration of counsel attesting to the need for additional time to conduct discovery.

On the day of the hearing, Steger's counsel attempted to file the declaration of Dr. Gazi that he had previously filed in opposition to the Doctors' motions for summary judgment. In his declaration in support of the filing, Steger's counsel conceded that he could have filed Dr. Gazi's declaration in support of Steger's opposition to the Hospital's motion but had made a strategic decision not to file an expert declaration on the issue of the Doctors' negligence because he thought it was unnecessary. In addition, in Steger's counsel's view, the Hospital had failed to

12

carry its initial prima facie burden on the motion to demonstrate the Doctors were not negligent.

On September 6, 2019, at the hearing on the motion, Steger argued that the Hospital had not carried its burden on the issue of the Doctors' negligence because Dr. Van Dam's opinion was limited to the conduct of the Hospital's non-physician employees and nursing staff.  He pointed out that Dr. Van Dam did not offer an opinion on whether the Doctors were negligent and that because Steger did not seek to hold the Hospital liable based on the conduct of its non-physician staff, he did not need to present expert evidence on the issue of negligence.

Steger also asked the court to rule on the existence of ostensible agency presented in the parties' respective papers. Steger argued that he had presented evidence that the Doctors were ostensible agents of the Hospital, sufficient to raise a triable issue on the issue of agency.  The Hospital responded that the notices in the Conditions of Admission and the Authorization form put Steger on notice of the relationship between the Hospital and the Doctors and thus eliminated liability for the Hospital based on the theory of ostensible agency.  After hearing additional arguments on the issue of ostensible agency, the court indicated that the tentative ruling would become the final order of the court.

Steger subsequently filed a motion "for a new trial" and a "motion to partially set aside the judgment" under Code of Civil Procedure section 473, subdivision (b).[7]  In his post-judgment motions, Steger sought to have the court consider his expert

---

[7] All statutory references are to the Code of Civil Procedure, unless stated otherwise.

13

evidence from Dr. Gazi on the issue of the Doctors' negligence.[8] The court denied the motions, finding that Steger failed to establish any basis for relief. The trial court also stated that no matter how it characterized the Doctors' employment relationship with the Hospital, and even if the Hospital was vicariously liable for the Doctors' conduct, Steger's failure to raise a triable issue on the Doctors' negligence was dispositive. Thus, in the court's view, it was not required to rule on the application of the ostensible agency theory of liability.

Steger timely appealed.

## DISCUSSION

### A. Standard of Review

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) A defendant moving for summary judgment meets this burden by presenting evidence demonstrating that one

---

[8] At the hearing on the summary judgment motion, the court observed that because it had previously reviewed Dr. Gazi's declaration in connection with the Doctors' summary judgment motion, it had also considered Dr. Gazi's opinions in connection with the Hospital's summary judgment motion.

14

or more elements of the cause of action cannot be established or a complete defense to the action.  (§ 437c, subd. (p)(2); *Aguilar,* at pp. 853–854.)  Once the defendant makes this showing, the burden shifts to the plaintiff to show the existence of a triable issue of material fact as to that cause of action or defense.  (§ 437c, subd. (p)(2); see *Aguilar,* at p. 850.)

When the facts are undisputed, the court may grant summary judgment on issues that otherwise could have been submitted to the jury because "[a]n issue of fact becomes one of law and loses its 'triable' character if the undisputed facts leave no room for a reasonable difference of opinion."  (*Ostayan v. Serrano Reconveyance Co.* (2000) 77 Cal.App.4th 1411, 1418, disapproved on other grounds in *Black Sky Capital, LLC v. Cobb* (2019) 7 Cal.5th 156, 165.)  Thus, the defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can be maintained.  (*Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 270.)

To determine whether the parties have met their respective burdens on summary judgment, the court considers "'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.' [Citation.]" (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612.)  A plaintiff opposing summary judgment cannot rely upon the mere allegations or denials of its pleadings, but "shall set forth the specific facts" based on admissible evidence showing a triable issue exists.  (§ 437c, subd. (p)(2); *Borders Online v. State Bd. of Equalization* (2005) 129 Cal.App.4th 1179, 1188.)  In the court's discretion, the plaintiff's

15

failure to comply with this requirement may constitute sufficient grounds for granting the motion. (See *Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 568.)

An appellate court independently reviews an order granting summary judgment. (*Aguilar, supra,* 25 Cal.4th at p. 860.) We determine whether the court's ruling was correct, not its reasons or rationale. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 85 ["We need not defer to the trial court and are not bound by the reasons for [its] summary judgment ruling; we review the ruling of the trial court, not its rationale"].) "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.) "'In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing [defendant's] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor.' [Citations.]" (*United Parcel Service Wage & Hour Cases* (2010) 190 Cal.App.4th 1001, 1009; accord, *Aguilar, supra,* 25 Cal.4th at p. 843.) We apply these standards here.

### B. The Trial Court Properly Granted Summary Judgment for the Hospital.

The Hospital's motion articulated two grounds for summary judgment: (1) that the conduct of the Hospital and its

16

employees did not fall below the standard of care and did not cause Steger's injuries, and (2) that the Hospital was not liable for malpractice under the ostensible agency theory because Steger was aware that the Doctors who allegedly injured him were independent contractors and not employees or agents of the Hospital.

In his complaint, Steger alleged direct and vicarious liability against all of the defendants. However, in Steger's opposition to the Hospital's motion for summary judgment, he effectively abandoned the claim of direct liability against the Hospital and its employees. Steger clarified that he was proceeding against the Hospital only under the theory that the Hospital was vicariously liable for the conduct of the Doctors, and therefore he was not required to refute the expert evidence presented in Dr. Van Dam's declaration that neither the Hospital nor its employees committed malpractice.

Thus, Steger's case against the Hospital required that he prove that the Doctors were ostensible agents of the Hospital and that the Doctors committed malpractice. In such cases of vicarious liability, as here, the Hospital's liability is wholly derived from the liability of the Doctors; the Hospital cannot be held vicariously liable unless the Doctors are found responsible. (*Lathrop v. HealthCare Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1426 ["There can be no vicarious liability in a medical malpractice action without the underlying liability of the medical practitioner"].) Recognizing this point of law, the trial court based its decision to grant summary judgment on its determination that Steger failed to present a triable issue of fact as to the negligence of the Doctors.

As we shall explain, however, the Hospital was entitled to judgment on the other ground raised in its motion—the Hospital was not liable for alleged malpractice under the ostensible agency theory because Steger was on notice that the Doctors were not the employees or agents of the Hospital. Indeed, " '[a]s a corollary of the de novo review standard, the appellate court may affirm a summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court. [Citation.]' [Citation.]" (*California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22.)

Here, the record shows the parties litigated the application of the ostensible agency liability theory in the trial court. The Hospital argued the issue in the moving papers, and Steger addressed it in his opposition. Both parties also argued the application of the theory during the summary judgment hearing and post-judgment proceedings. In addition, the Hospital and Steger have argued the matter here. Moreover, even though both parties fully litigated the application of the ostensible agency doctrine in the trial court and in their appellate briefs in this court, they were given yet another opportunity to address the matter when we allowed them to file supplemental briefs after oral argument. (See § 437c, subd. (m)(2) [affording the parties an opportunity to present supplemental appellate briefs when reviewing court affirms an order granting summary judgment on a ground not relied upon by the trial court].) [9] Thus, even

---

[9] In our view, given the record on appeal and the briefs, section 437c, subdivision (m)(2), did not require that we provide Steger with an additional opportunity to brief the ostensible agency doctrine in this court before affirming the trial court's grant of summary judgment on that ground. (See *Hooked Media*

18

though it was not the basis of the trial court's decision to grant summary judgment, this court can consider and affirm the judgment if we conclude that there is no triable issue as to the application of the ostensible agency theory of liability. We, therefore, turn to the merits of the Hospital's assertion that it is entitled to summary judgment against Steger because the Doctors who allegedly committed the malpractice were independent contractors and not ostensible agents of the Hospital. Our analysis begins with an examination of the law governing the ostensible agency liability theory.

---

*Group, Inc. v. Apple Inc.* (2020) 55 Cal.App.5th 323, 336, fn. 1 [where party already "has been afforded an opportunity to present its views, no supplemental briefing is required"]; *Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39 [acknowledging the purpose of supplemental briefing under section 437c, subdivision (m)(2), is to allow the parties a full and fair opportunity to brief the dispositive issues, and concluding that where issues were raised below and fully addressed in the appellate briefs, the purpose of section 432c, subdivision (m)(2), is met and no supplemental briefing is required].) Nevertheless, in this case, out of an excess of caution we permitted the parties to file supplemental briefing to further address the merits of affirming the trial court's grant of summary judgment on the ostensible agency theory and to argue whether "additional evidence relating to that ground exists, but [Steger] has not had an adequate opportunity to present the evidence or to conduct discovery on the issue." (§ 437c, subd. (m)(2).)

## 1. Ostensible Agency Theory of Medical Malpractice Liability.

In general, a principal is not vicariously liable for the negligent acts of an independent contractor. (*Hill Brothers Chemical Co. v. Superior Court* (2004) 123 Cal.App.4th 1001, 1008.) However, in the medical context, vicarious liability has been extended to a hospital entity under a theory of ostensible agency for the acts of non-employee physicians who perform services on hospital premises. (See, e.g., *Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 507–510 [finding that the patient had presented substantial evidence of the hospital's conduct that lead the patient to reasonably believe that the doctors were ostensible agents of the hospital]; *Mejia v. Community Hospital of San Bernardino* (2002) 99 Cal.App.4th 1448, 1453–1459 (*Mejia*) [reversing an order granting nonsuit for the hospital because the patient presented sufficient evidence to establish that radiologist was the ostensible agent of hospital].) A physician is the ostensible agent of a hospital if the hospital intentionally or negligently causes the patient to believe the physician is the hospital's agent. (*Mejia,* at p. 1453, 1456; Civ. Code, § 2300 ["An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him"]; see also Civ. Code, § 2317.) Thus, to hold a hospital liable for a physician's negligence under an ostensible agency theory, the patient must demonstrate that the hospital engaged in conduct that would cause a reasonable person to believe the physician was the hospital's agent and that the patient relied on

the apparent agency relationship. (*Markow v. Rosner* (2016) 3 Cal.App.5th 1027, 1038 (*Markow*).)

In that case, the hospital is vicariously liable for negligence on an ostensible agency theory, "unless (1) the hospital gave the patient actual notice that the treating physicians are [independent contractors and] not hospital employees, and (2) there is no reason to believe the patient was unable to understand or act on the information, or (3) the patient was treated by his or her personal physician and knew or should have known the true relationship between the hospital and physician." (*Wicks v. Antelope Valley Healthcare Dist.* (2020) 49 Cal.App.5th 866, 884 (*Wicks*).) Consequently, to defeat a medical malpractice claim based on allegations that the non-employee doctors were the hospital's ostensible agents, the hospital must demonstrate that the patient had some reason to know and capacity to understand the actual relationship between the hospital and the physician—i.e., because the hospital gave the patient actual notice of the independent contractor status or because the patient's personal physician provided the treatment. (*Markow, supra,* 3 Cal.App.5th at p. 1038.)

Although the existence of ostensible agency is a factual issue, it may be resolved on a motion for summary judgment, where the undisputed evidence indicates that the patient knew or had reason to know and the capacity to understand that the treating physician was not the hospital's agent. (See, e.g., *Wicks, supra,* 49 Cal.App.5th at p. 884.) In *Wicks,* for example, the appellate court affirmed the order granting summary judgment for the hospital on the issue of ostensible agency where the undisputed evidence showed the hospital gave Mr. Wicks meaningful written notice that his doctors were independent

21

contractors rather than hospital employees, and that Mr. Wicks had the capacity to acknowledge the notice. (*Ibid.*) In affirming, the court of appeal observed that the evidence demonstrated that at the time he arrived at the emergency department and was admitted to the hospital, Mr. Wicks was alert, oriented, and cooperative, and that shortly thereafter, Mr. Wicks signed admission documents containing the notice that the staff physicians were not employees or agents of the hospital. (*Ibid.*; Compare, *Whitlow v. Rideout Memorial Hospital* (2015) 237 Cal.App.4th 631, 640 (*Whitlow*) [reversing order granting summary judgment for hospital defendant because plaintiff patient presented a triable issue of fact based on eye witness accounts and expert evidence that patient's deteriorating condition prevented her from comprehending the notice in hospital admission forms that physicians were independent contractors].)

With these principles in mind, we turn to whether the Hospital negated the inference of ostensible agency in its motion for summary judgment.

### a. The Hospital Satisfied Its Initial Burden on Summary Judgment to Refute Application of the Ostensible Agency Theory of Liability.

The undisputed evidence shows that Steger sought treatment at the Hospital on October 25, 2016. After he was admitted to the Hospital, the Doctors conducted various medical procedures on him using the Hospital's equipment. These facts create the inference that the Doctors were the Hospital's

ostensible agents at the time Steger suffered the injuries alleged in the complaint. Thus, as part of its initial burden in moving for summary judgment, the Hospital was required to negate the ostensible agency inference by establishing that Steger knew or had reason to know and capacity to understand that the Doctors were not the Hospital's agents when they rendered the allegedly negligent treatment. In our view, the Hospital met its burden on this issue.

First, the Hospital presented evidence that it gave Steger actual notice of their status as independent contractors.[10] Specifically, Steger signed and initialed the Conditions of Admission form that unequivocally advised him that *all* physicians providing services at the Hospital were independent

---

[10] Although not necessarily determinative of the application of ostensible agency doctrine, we note that the Hospital also presented uncontroverted evidence from the Hospital's Director of Staff Services, Ms. Parrini, who, after specifically identifying the Doctors by name (i.e., Dr. Kasher and Dr. Kao) among other physicians involved in Steger's care, stated that the "defendant physicians sued in this action were independent contractors, not employees or agents of [the Hospital]."

In an effort to revive on appeal an actual agency theory, Steger's counsel misrepresents the record, incorrectly stating: Ms. Parrini "never declares that Dr. Kasher and Dr. Kao were independent contractors." Based on this false representation, Steger's counsel asks for additional discovery into the relationship between the Doctors and the Hospital. Having abandoned an actual agency theory below, and having failed to contest the clear evidence that the Doctors were independent contractors, Steger's last minute request to proceed on an actual agency theory is not well taken.

23

medical providers and that none were employees or agents of the Hospital.[11] After that, before the sigmoidoscopy, he signed the Authorization form that apprised him of the independent contract relationships of those involved in the procedure. The Hospital also presented evidence from Steger's deposition during which he identified his signature and initials on these documents and conceded that even though he did not recall reading the documents, he would have read and reviewed them unless he was incoherent.

Second, the Hospital also presented evidence that Steger had the mental acuity to understand the notices. Steger's medical records showed he was coherent, alert, and communicative when he was admitted to the Hospital. The evidence showed that when he signed these forms, Steger had the presence of mind to describe his current condition and his history of treatment, and that he was able to express frustration over his situation. The evidence that he initially refused surgical intervention and certain medications further demonstrates that he could reflect and make decisions about his treatment and express his wishes. The records also show that although he was in pain, his condition was stable, and his vital signs were within normal limits at the time. The totality of this evidence

---

[11] The Hospital also introduced documents from Steger's prior hospitalization in late July and early August of 2016, including another Conditions of Admission form containing his signature, in which he acknowledged that the Doctors treating him were independent contractors, and not Hospital employees. This prior acknowledgement in the Conditions of Admission form underscores the Hospital's argument that Steger had notice of the Doctors' status as independent contractors and not Hospital employees.

demonstrates that Steger had the capacity to understand the notice, and had reason to know that the Doctors were independent contractors, not the Hospital's employees or agents. The Hospital's evidence negated the application of the ostensible agency theory and thus shifted the burden to Steger to present a triable issue on the ostensible agency theory.

### b. Steger Failed to Demonstrate a Triable Issue of Material Fact on Ostensible Agency.

Steger's opposition to the Hospital's motion contained several responses addressing the application of the ostensible agency theory, none of which, in our view, raises a triable issue warranting a trial.

Steger does not deny the existence of the notices in the Condition of Admission and the Authorization form. Instead, he assails them, arguing that they are legally invalid and ineffective because when he signed the forms, he was in no condition to understand them.[12]

As to his attack on the notices' legal validity, he cites to an observation in *Mejia* that such notices are legally infirm when

---

[12] In an apparent effort to avoid the import of the Condition of Admission and Authorization forms that Steger signed when admitted through the emergency room, Steger's counsel stated in oral argument that the theory of his case had nothing to do with Steger's admission through the emergency room and that the forms signed there were irrelevant. In the supplemental briefing permitted by the court, Steger's counsel again does an about face, disclaiming the oral argument statements and conceding the care in the emergency room is part of his case.

the treatment involves "emergency care." (*Mejia, supra,* 99 Cal.App.4th at p. 1454 ["Many courts have even concluded that prior notice may not be sufficient to avoid liability in an emergency room context, where an injured patient in need of immediate medical care cannot be expected to understand or act upon that information"].) We are not convinced the statement in *Mejia* reflects the current California law. Notably, *Mejia*'s reference summarizes the case law of other states, specifically Ohio, Indiana, and South Carolina. In addition, the statement is dicta. Although the patient in *Mejia* was treated in the emergency room, there was no evidence that the hospital provided the patient with any admission document containing a notice about the employment relationships between the doctors and the hospital. (*Id.* at pp. 1450–1452.)

Moreover, the *Wicks* court implicitly rejected the dicta in *Mejia,* stating that "Hospitals providing emergency care to members of the public who do not have an appointment or any relationship with the staff physicians have no practical means to give such notice before a patient is admitted. Were we to accept plaintiffs' argument that defendant may be liable in this case for the negligence of its ER doctors, there would be no circumstance under which actual notice to an ER patient of an ER doctor's status as an independent contractor would suffice to avoid a hospital's liability for the doctor's negligence." (*Wicks, supra,* 49 Cal.App.5th at pp. 884–885.) In our view, based on *Wicks* and *Whitlow*, it appears that the application of the doctrine is determined by the totality of the circumstances in which the

26

notice was provided to the patient, not solely on whether the patient sought "emergency care."[13]

Steger also attacks the legal validity of the notice in the Authorization form, arguing that it is ambiguous. He asserts that it is unclear whether notice applied to the Doctors or only to the other healthcare professionals involved in the sigmoidoscopy procedure. Even if we were to adopt Steger's interpretation of the Authorization form, Steger does not address the notice provided in the Conditions of Admission, which is unequivocal, providing "*all* physicians . . . are independent contractors and are not employees or agents of the hospital." This language is broad and unambiguous. Steger has not refuted that it covers the entirety of the treatment he received in the Hospital, including the procedures performed by the Doctors. Thus, the notice in the Condition of Admission, standing alone, defeats the application of the ostensible agency theory of liability here. (See *Markow, supra,* 3 Cal.App.5th at p. 1041, fn. 5 [observing that a patient need not be advised of physician's independent contractor status

---

[13] Nothing in this opinion should be read to suggest that a hospital providing notice of the independent contractor status of various medical professionals in a Conditions of Admission form given to a patient in an emergency room setting negates the application of ostensible agency liability in every case. Indeed, as the facts of *Whitlow* and *Wicks* demonstrate the determination of this issue is case specific. The full context and circumstances of the presentation of admission forms, including among other factors, the language of and appearance of the notice and the condition of the patient are determinative of the issue.

27

more than once to receive adequate notice from the hospital that the doctors are independent contractors].)

As to Steger's assertion that the notice was ineffective because he lacked the capacity to comprehend it, Steger has not brought forward admissible evidence to controvert the Hospital's evidence on this point. Steger failed to provide evidence suggesting he received and signed the Conditions of Admission under circumstances in which he could not be expected to understand or act upon the information. Steger has not challenged his medical records, which disclosed that his condition was stable and he was coherent when he signed the document. Instead, he relies on statements in his deposition and his declaration in support of his opposition to the motion in which he states that "maybe" he was worried about other things and he was "not in the right state of mind" because of his "condition" and unspecified "medication," and "symptoms" when he executed the admissions document. Steger's non-specific and speculative statements about his mental state and condition are insufficient to raise a triable issue as to his capacity to understand the information in the notice. (See *Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 11 [holding that where the opposition to a motion for summary judgment presented speculation in place of specific facts, the trial court correctly granted summary judgment]; see also *Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1451 [A party may not create a triable issue of fact to defeat summary judgment merely through a self-serving declaration; in determining whether a triable factual issue exists, the court may "disregard contradictory" or "self-serving affidavits of the party"].)

In addition, Steger has not brought forward any other evidence raising a triable issue of fact about the application of the ostensible agency theory. Steger's subjective belief that the Doctors were employees or agents of the Hospital derived from other facts such as the statements of the doctor that referred him to the Hospital, the registration clerk at the Hospital's clinic, the location of the Doctors' practice, the Doctors' use of the Hospital's equipment, or the after the fact remark Steger attributes to the hospital clerk that the Doctors were "terminated employees," does not invalidate the express clause denying the existence of an agency relationship. In reaching this conclusion, we are mindful of the general rule that when a person with the capacity to read and understand an instrument signs it, they are, in the absence of fraud and imposition, bound by its contents and estopped from claiming that its provisions are contrary to their intentions or understanding. (*Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299, 303.) Given that there is an express, pre-treatment agreement and acknowledgement of the Hospital's relationship to the Doctors, Steger cannot argue that an implied contract embraces the same subject but compels a different result. (See *Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1387.)

Steger's acknowledgement of the statement in the Conditions of Admission that the Doctors are not employees or agents of the Hospital thus defeats his ostensible agency theory of liability. Because Steger failed to raise a triable issue regarding the evidence the Hospital presented to demonstrate

that the ostensible agency theory did not apply, summary judgment was properly granted for the Hospital.[14]

## 2. The Trial Court Properly Denied Steger's Request for a Continuance of the Summary Judgment Hearing.

In his opposition to the motion, Steger requested a continuance under section 437c, subdivision (h). However, as the trial court pointed out, Steger failed to support his request with a declaration of his counsel, attesting to his need for additional discovery, describing what he hoped to find, or explaining why in the 18 months of litigating his case, he had not been able to obtain the discovery he needed.

"Continuance of a summary judgment hearing is not mandatory, . . . when no affidavit is submitted or when the submitted affidavit fails to make the necessary showing under section 437c, subdivision (h)." (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254; accord, *California Auto. Ins. Co. v. Hogan* (2003) 112 Cal.App.4th 1292, 1305–1306 [trial court was not required to grant plaintiffs a continuance to conduct additional discovery before ruling on defendant's summary judgment motion, where plaintiffs provided no details concerning the evidence they expected to develop through additional discovery or why the additional discovery was necessary].) Given the record, we agree with the trial court's assessment of the request and thus

---

[14] In light of our conclusion, we do not consider the merits of the trial court's basis for granting the summary judgment motion, namely, that Steger failed to present a triable issue of fact as to the Doctors' negligence.

conclude that the court did not abuse its discretion in refusing to continue the hearing.

Likewise, in the supplemental briefing this court permitted after oral argument, Steger asks for an additional opportunity to conduct further discovery. However, he has failed to persuade us that any additional evidence relating to any agency theory exists, and that he has not had an adequate opportunity to present such evidence or to conduct discovery on the issue.

### C. Steger Has Not Demonstrated Any Other Basis to Reverse.

Steger has not presented any other reason to reverse the judgment. First, we observe that Steger's opening brief is focused primarily on his contention that the trial court erred in requiring him to support his opposition to the summary motion with expert opinion on the existence of ostensible agency. Although Steger correctly argues that expert evidence is not required to demonstrate the existence of an agency relationship, his argument is beside the point. Here, the trial court granted summary judgment for the Hospital because Steger failed to present expert evidence on the malpractice standard of care and causation, not because he failed to present expert opinion on the existence of ostensible agency.

Second, Steger has not shown reversible error concerning the denial of his post-judgment motions for a new trial and relief under section 473, subdivision (b). The post-judgment motions related solely to Steger's effort to present Dr. Gazi's expert declaration on the issue of the Doctors' negligence. Neither post-judgment motion concerned the application of the ostensible

31

agency doctrine that we consider here. Consequently, the court's rulings on those motions do not affect the outcome of this appeal.

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.


MOOR, J.

We concur:


BAKER, Acting P. J.


KIM, J.