Filed 3/26/24  Tobin v. City of San Jose CA6

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| NONA TOBIN, Plaintiff and Appellant, v. CITY OF SAN JOSE et al., Defendants and Respondents. | H049987 (Santa Clara County Super. Ct. No. 17CV312610) **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** **NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on February 28, 2024, be modified as follows:

1. On pages 12, line 23, the sentences starting with "As noted above," and continuing on page 13, line 7 ending with "section 1542].)" are deleted and the following paragraphs are inserted in their place:

Here, there is much more than a mere recital.  As noted above, the separation

agreement contains two releases.  The second release begins with the statement that

"Tobin has read and understands" Civil Code section 1542, which is initialed by Tobin.[4] It continues that, "[h]aving reviewed Section 1542 of the California Civil Code, Tobin voluntarily waives her rights under Section 1542" and releases any claims "known or unknown" stemming from "conduct . . . prior to or simultaneously with the execution" of the agreement.  Finally, the release acknowledges that Tobin "has knowingly waived any and all rights under Civil Code 1542."  Thus, the plain language of the release shows that Tobin understood her rights under section 1542, knowingly waived those rights, and released unknown claims arising out of conduct prior to or simultaneous with the agreement.

Tobin argues that this express waiver of Civil Code section 1542 is mere boilerplate, which should be ignored under *Casey*.  However, there was no express waiver of section 1542 in *Casey*, only a release of unknown claims without any reference to the section. (See *Casey*, *supra*, 59 Cal.2d at p. 101.)  Since *Winet v. Price* (1992) 4 Cal.App.4th 1159 (*Winet*) more than three decades ago, Court of Appeal decisions repeatedly have held that unknown claims may be released pursuant to express contractual waivers of section 1542.

---

[4] The second release states in full: "Tobin has read and understand the following language of Section 1542 of the California Code:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HER MUST HAVE MATERIALLY AFEFCTED HER SETTLEMENT WITH DEBTOR.

"____/s/_____Initials

"Having reviewed Section 1542 of the California Code, Tobin voluntarily waives her rights under Section 1542, and releases the City, its current and former officials and employees from any and all claims, whether known or unknown, stemming from any event, action, inaction, or other conduct by the City of San Jose, its current and former officials and employees that occurred prior to or simultaneously with the execution of this Agreement and Release.  By placing her initials in the foregoing paragraph, Tobin acknowledges that she has knowingly waived any and all rights under Civil Code 1542."

2

(See *id.* at pp. 1170-1171; see also *Belasco v. Wells* (2015) 234 Cal.App.4th 409, 422; *Salehi v. Surfside III Condominium Owners' Assn.* (2011) 200 Cal.App.4th 1146, 1159-1161; *San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1053-1055.) Moreover, the Supreme Court has endorsed *Winet* and held it consistent with *Casey.* (*Jefferson v. California Dep't of Youth Authority* (2002) 28 Cal.4th 299, 306-307.)

Although Tobin attempts to distinguish *Winet*, these attempts are unpersuasive. For example, Tobin notes that *Winet* involved wrongful conduct committed before the release in that case was signed. But the same is true here: The City has applied the release in the 2002 separation agreement only against Tobin's fiduciary duty and estoppel claims, both of which arise out of misrepresentations or omissions prior to the agreement. Tobin also notes that the plaintiff in *Winet* consciously understood the benefits conferred by Civil Code section 1542 and consciously waived those benefits after receiving counsel's advice. But the plain language of the second release here—including Tobin's initialing of the statement that she read and understood section 1542—demonstrates that Tobin likewise consciously understood and waived her rights under section 1542. Tobin points out that she was represented by counsel only in amending the separation agreement, but this fact makes little difference here, as Tobin expressly acknowledged in the separation agreement that she was "given the opportunity to have this Agreement and Release reviewed by her attorney and that the City has encouraged her to do so." Finally, Tobin has not denied that she understood her rights under section 1542 and also understood that she was waiving those rights and releasing unknown claims arising out of conduct prior to or simultaneous with the separation agreement.[5] As a consequence, we see no material difference between *Winet* and this case.

_____

[5] Tobin submitted a declaration denying that she intended to waive claims for future failure to pay her pension benefits. The declaration states that "I did not know the
(continued)

3

There is no change in judgement.

Appellant's petition for rehearing is denied.

---

City would break its promise to pay the retirement benefits I had earned," and "I did not waive my lifetime yearly guaranteed cost of living adjustment as a retiree as a consideration for the earned management salary increases I received as a result of the 2002 settlement agreement." But, as previously noted, the City has not argued that the separation agreement bars Tobin's impairment claim, which arises out of the alleged failure to pay her full pension starting in 2016. It has argued that the agreement bars Tobin's estoppel and fiduciary duty claims, which arise out of conduct prior to the agreement. Notably absent from Tobin's declaration is any denial that she understood the separation agreement to release all claims arising out of prior conduct.

_____
BROMBERG, J.




_____
BAMATTRE-MANOUKIAN, ACTING P.J.




_____
DANNER, J.










*Tobin v. City of San Jose et al.*
H049987

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| NONA TOBIN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SAN JOSE et al.,<br><br>    Defendants and Respondents. | H049987<br>(Santa Clara County<br>Super. Ct. No. 17CV312610) |

This appeal is related to two other appeals resolved today.  Like her coplaintiffs in case Nos. H049387 (*Preservation of Benefit Plan Retiree Association v. City of San José*) and H050036 (*Loewen v. City of San José*), Nona Tobin is a former employee of the City of San José (City), who retired and received pension allowances under the City's Federated City Employees Retirement System (FCERS) defined benefit plan.  Starting in 2014—and, in Tobin's case, in 2016— based on the plan's incorporation of limits that federal law places on payments from qualified defined benefit plans, the City began reducing retirement allowances for a small group of relatively well-compensated retirees who had retired early.  Tobin and 19 other such retirees, as well as a non-profit corporation representing them, challenged these reductions, but the trial court eventually dismissed all of their claims, either on demurrer or summary judgment.  We ordered the two appeals filed by Tobin's coplaintiffs considered together for argument and

disposition, but we consider Tobin's appeal separately because it raises issues unique to her.

Like her coplaintiffs, Tobin sued the City, its city manager, and the Board of Administration of the FCERS (Board) (jointly Defendants) for unconstitutional impairment of contract. Unlike her coplaintiffs, Tobin did not argue in her briefs before this Court that her pension benefits were impaired by the enactment of an ordinance in 2011 retroactively imposing limits on benefits. Instead, Tobin's briefs contended that she was denied cost-of-living-adjustment (COLA) increases due under the FCERS plan as it stood in 1989. Because Tobin did not make this argument in the trial court, it has been forfeited.

Tobin also brings claims for equitable estoppel, promissory estoppel, and breach of fiduciary duty. On summary judgment, the trial court ruled that these claims were barred by a release in Tobin's 2002 separation agreement with the City. Tobin contends that the release does not extend to her estoppel and breach of fiduciary duty claims. We disagree. As the trial court recognized, the release executed by Tobin is broad and extends to any claims "known and unknown, suspected or unsuspected, for damages . . . past, present, and future . . . related to her employment with the City." As Tobin's estoppel and breach of fiduciary duty claims are based on alleged misrepresentations and omissions made prior to or simultaneously with her retirement, they fall squarely within the plain language of the release, and Tobin's attempts to avoid that plain language are unpersuasive.

Accordingly, the judgment in favor of the City and the city manager is affirmed. In addition, because Tobin did not timely appeal the judgment in favor of the Board, her appeal from that judgment is dismissed.

## I. BACKGROUND

A.   *The FCERS Plan*

The FCERS plan was established in 1975.  (San José Ord. No. 17739.)  Under the plan, members generally are entitled to "annual service retirement allowances"—that is, pension payments—under the following formula: "two and one-half percent (2.5%) of such member's final compensation times the years of Federated City Service," up to "a maximum of seventy-five (75%) of such member's final compensation."  (San José Mun. Code, § 3.28.1110, subd. (C).)  In addition, starting in 1981, retirees were entitled to COLA's of up to 3 percent per year based on the consumer price index for the San Francisco-Oakland area, with any increase above that amount "banked" for use when the index dipped below 3 percent.  (San José Ord. No. 20479)

In 1989, in response to changes in federal law, the City enacted Ordinance No. 23283 (1989 Ordinance), which incorporates into the FCERS plan the limits in section 415 of the Internal Revenue Code[3] (Section 415) on payments from defined benefit pension plans.  Before this change, state and local government plans apparently were subject to more lenient limits than private plans, but in 1988 Congress extended the limits on private plans to such government plans.  (Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100-647 (Nov. 10, 1988) 102 Stat. 3342, § 6054.)  Congress, however, included a "grandfather" clause allowing government plans to elect to pay existing participants benefits above Section 415's general limit if those benefits are "without regard to any amendment of the plan made after October 14, 1987."  (§ 415(b)(10)(A) & (B).)

The 1989 Ordinance added a section entitled "Benefit Limitations" to chapter 3.28 of the San José Municipal Code incorporating Section 415's general limit and making a grandfather election.  (San José Ord. No. 23283, § 2, amending San José Mun. Code,

---

[3]  The Internal Revenue Code is found in title 26 of the United States Code.

ch. 3.28, pt. 8 by adding § 3.28.995, underscoring omitted.) The first part of the section imposes Section 415's general limit on future members: "[T]he benefits payable to any person who becomes a member of [the FCERS] on or after January 1, 1990, shall be subject to the limitations set forth in Section 415 of the Internal Revenue Code . . . ." (San José Ord. No. 23283, § 2, adding San José Mun. Code, former § 3.28.955, subd. (A).) The second part makes the "grandfather" election allowing greater payments to existing members: "[T]he benefits payable to any person who became a member of [the FCERS plan] prior to January 1, 1990, shall be subject to the greater of the following limitations as provided in Section 415(b)(10) of the Internal Revenue Code: [¶] 1. The limitations set forth in Section 415 of the Internal Revenue Code; or [¶] 2. The accrued benefit of the member without regard to any benefit increases pursuant to any amendment of [the FCERS plan] adopted after October 14, 1987." (San José Ord. No. 23283, § 2, adding San José Mun. Code, former § 3.28.955, subd. (B).)

The City subsequently made two important changes to the FCERS plan. In 2001, the City changed the definition of "final compensation," one of the terms in its retirement allowance formula. (San José Ord. No. 26353, [adopted May 15, 2001], amending San José Mun. Code, § 3.28.030; see also San José Mun. Code, § 3.28.030.11 [definition of final compensation].) Previously, the term had been defined as "the highest average annual compensation" over "three consecutive years" of service. In 2001, the City changed the definition to the highest annual average over any "twelve consecutive months" for individuals retiring after July 1, 2001. (San José Ord. No. 26353, amending San José Mun. Code, § 3.28.030.11, subd. (B).) Additionally, in 2006, the City changed the FCERS plan's COLA formula. Instead of equaling the consumer price index up to 3 percent with banking of any excess, the City adopted a flat 3 percent annual increase. (San José Ord. No. 27652, amending San José Mun. Code by adding § 3.44.160, see also San José Mun. Code, § 3.44.160(A)(1).)

4

In 2011, the City passed Ordinance No. 28885 (2011 Ordinance).  (San José Ord. No. 28885.)  According to the memorandum from the city attorney proposing the ordinance, the ordinance was intended to make amendments that were "technical in nature" in preparation for an IRS review of the FCERS plan.  Among other things, the 2011 Ordinance amended the provisions concerning Section 415.  It left the provision concerning new members largely untouched, adding only a reference to subsequent subsections.  (San José Ord. No. 28885, § 21, amending San José Mun. Code, former § 3.28.955, subd. (A).)  The ordinance, however, amended the subsection on existing members to state that "the 415(b) limit shall not be less than the accrued benefit of the member under this system determined without regard to any amendment of the plan made after October 14, 1987."  (*Id.*, amending San José Mun. Code, former § 3.28.955, subd. (B).)  In addition, the ordinance added new provisions detailing the limits imposed by Section 415, as well as explaining how to deal with issues such as service credit purchases and participation in other plans.  (San José Ord. No. 28885, § 21, adding San José Mun. Code,§ 3.28.955, subds. (E)-(P).)

B.     *Tobin*

Nona Tobin began working for the City in 1976.  In 2004, after serving as the City's Director of Human Resources, she retired at age 55.

Before her retirement, Tobin was "loaned" to the United Way of Silicon Valley. In December 2002, in the midst of this loan, Tobin entered into a separation agreement with the City to resolve "any dispute or potential disputes between the parties."  In the agreement, she agreed to resign as a City employee "voluntarily and irrevocably," effective December 31, 2003.  The agreement also contained two releases.  First, Tobin agreed to release "any and all claims, of any kind," against the City, including any "misrepresentation or fraud, tort claims of any nature known and unknown, suspected or unsuspected for damages . . . past, present and future . . . related to her employment with the City . . . ."  This release, however, contained a carve-out:  It would not affect "Tobin's

5

right to service retirement benefits" under the FCERS plan. Second, Tobin agreed to waive her rights under section 1542 of the Civil Code against releasing unknown claims. This waiver included "any and all claims, whether known or unknown," stemming from conduct by the City "prior to or simultaneously with the execution" of the separation agreement. To acknowledge that she knowingly waived the protections of Civil Code section 1542, Tobin initialed the paragraph containing this waiver.

### C.    *The Reductions in Tobin's Pension Payments*

Tobin appears to have begun receiving retirement allowances upon her retirement in 2004. In March 2016, the City sent Tobin a letter informing her that her monthly allowance had reached the limits imposed by Section 415(b) and that beginning the next month her allowance would be adjusted to keep her benefit payments under the Section 415(b) limit. The following month, a City official informed Tobin that "[u]nder the grandfather benefit, the old COLA rules apply," and the following year Tobin was informed that, based on the 3.5 percent consumer price index for the previous year, she would receive a 3-percent COLA with 0.5 percent "banked for future use."

### D.    *The Proceedings Below*

In November 2016, Tobin, 21 other retirees, and a non-profit corporation representing them filed a government claim with the City challenging reductions in their pension allowances. Nine months later, Tobin, the other retirees, and the non-profit filed a petition for writ of mandate and complaint against the City, the city manager, and the Board. In the petition and complaint, which was amended three times, Tobin and the other plaintiffs (jointly Plaintiffs) claimed unconstitutional impairment of their vested rights to pension benefits based on the 2011 Ordinance—not the 1989 Ordinance— which, Plaintiffs alleged, for the first time imposed Section 415's limits on total benefits payments and did so retroactively. Tobin and the other retirees also asserted claims for equitable estoppel, promissory estoppel, and breach of fiduciary duty based on alleged misrepresentations and omissions concerning their retirement benefits.

6

When Defendants demurred to the first amended petition and complaint, the trial court overruled the demurrer on the impairment claims but sustained the demurrer on the estoppel and fiduciary duty claims against the Board because no government claim had been filed with the Board. It also sustained the demurrers on the estoppel and fiduciary duty claims against the City with respect to all Plaintiffs except Tobin and Evet Loewen on the ground that the joint government claim Plaintiffs submitted to the City was untimely.

In 2021, Defendants moved for summary judgment. The trial court granted the motion with respect to Plaintiffs' impairment claim. Rejecting Plaintiffs' contention that the 1989 Ordinance imposed only a "tax-qualification limit," the court concluded that the ordinance instead imposed caps on the payment of benefits. Because the ordinance imposed the Section 415 general limit only on future employees and included a grandfather provision protecting the rights of existing employees, the court concluded that 1989 Ordinance did not impair Plaintiffs' vested pension rights. The trial court also held that the Government Claims Act barred the remaining claims of all Plaintiffs except Tobin and Loewen. Accordingly, the court granted summary judgment against all Plaintiffs except Tobin and Loewen and granted summary adjudication of Tobin's and Loewen's impairment claims. On July 16, 2021, the court entered judgment in favor of the Board against all Plaintiffs and in favor of the City and the city manager against all the plaintiffs except Tobin and Loewen.

The City and the city manager later moved for summary judgment on Tobin's estoppel and fiduciary duty claims, and on February 24, 2022, the trial court granted the motion based on the releases in Tobin's 2002 separation agreement. Noting that the language of the releases is broad and unequivocal, the court held that the releases covered Tobin's estoppel and fiduciary duty claims because those claims stemmed from alleged conduct prior to or simultaneous with the agreement.

7

On March 4, 2022, the trial court entered judgment in favor of the City and the city manager against Tobin, and on April 29, 2022, Tobin filed a notice of appeal.

## II. DISCUSSION

In her briefing on appeal, Tobin asks that the judgment based on the summary adjudication of her impairment claim and the summary judgments concerning her remaining claims be reversed. This request appears designed to exclude her claims against the Board, which were the subject of an earlier judgment, that Tobin did not timely appeal. Accordingly, we construe Tobin's arguments to concern only her claims against the City and the city manager.

### A.  *Tobin's Appeal Concerning the Board*

As in the related appeal by Evet Loewen, the Board argues that this court lacks jurisdiction to hear Tobin's appeal from the judgment against her in favor of the Board because Tobin did not timely appeal that judgment. We agree.

The trial court entered judgment in favor of the Board against all Plaintiffs on July 19, 2021, and notice of entry of that judgment was served the following day, starting the clock running on an appeal. A timely notice of appeal by all Plaintiffs, including Tobin, was filed on August 26, 2021. However, on September 2, 2021, Plaintiffs filed an amended notice of appeal that deleted Tobin and Loewen.

On March 4, 2022, after the trial court granted summary judgment on Tobin's "ancillary" claims, it entered judgment in favor of the City and the city manager against Tobin, and four days later, Defendants filed and served notice of entry of that judgment. On April 29, 2022, Tobin filed a notice of appeal from the March 4, 2022, judgment.

Tobin's appeal is untimely as to the July 2021 judgment in favor of the Board. In multiparty cases, a judgment leaving no issues to be determined concerning a party is final as to that party (see, e.g., *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 759 (*Baycol*)) and therefore immediately appealable. (See, e.g., *Heshejin v. Rostami* (2020)

8

54 Cal.App.5th 984, 991.)  As Tobin was served with notice of entry of the judgment in favor of the Board on July 20, 2021, she had 60 days from that date—or until September 18, 2021—to notice an appeal from that judgment.  (Cal. Rules of Court, rule 8.104(a)(1)(B).)  Although Tobin originally filed a notice of appeal within that time period, she abandoned that appeal (see *Dow v. Superior Court* (1956) 140 Cal.App.2d 399, 401-402), and did not file another notice of appeal until April 2022, well outside the 60-day period.  Consequently, to the extent that Tobin's second notice of appeal purported to appeal from the judgment in favor of the Board, it is untimely and must be dismissed for lack of jurisdiction.  (*Baycol, supra*, 51 Cal.4th at p. 761, fn. 8; *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 666-667.)

B.      *The Impairment Claim*

The California Constitution prohibits laws "impairing the obligation of contracts." (Cal. Const., art. I, § 9.)  California courts have long recognized that statutes and municipal ordinances establishing pension plans create implied contractual rights that the contract clause protects against impairment.  (See, e.g., *Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1076).  In their appeals, Tobin's coplaintiffs deny that the City adopted pension payment caps in the 1989 Ordinance and instead assert that the caps were imposed by the 2011 Ordinance, which impaired pension rights that had vested since 1989.  In her briefing on appeal, Tobin takes a different approach.[4]  She contends that she was deprived of COLA increases that were promised before the 1989 Ordinance, and she faults Defendants for failing to present evidence that the reductions in her pension benefits were limited to increases adopted after 1989.  Because Tobin did not make these arguments in the trial court, we hold them forfeited.

---

[4] At oral argument, Tobin sought to adopt her coplaintiffs' arguments on appeal. Because Tobin did not do so in her briefing, this opinion does not consider those arguments (which we found unpersuasive).

9

In the trial court, Tobin was represented by the same counsel as her coplaintiffs, and Plaintiffs jointly opposed Defendants' request for summary adjudication on their impairment claims. In their memorandum of points and authorities, Plaintiffs argued that "the City modified [their] vested rights" in "the 2011 Ordinance, which imposed a total cap on [Plaintiffs'] pension benefits" and deprived them of benefit enhancements adopted in 2001 and 2006. Nothing in Plaintiffs' memorandum suggested that the City failed to pay COLA benefits that vested before the 1989 Ordinance.

Indeed, Plaintiffs presented evidence showing just the opposite. For example, exhibit 9 to the declaration that Tobin submitted in connection with Plaintiffs' joint opposition to the first motion for summary judgment is an April 6, 2016 e-mail from a manager in the Office of Retirement Services informing Tobin that "[u]nder the grandfather benefit, the old COLA rules apply." Another exhibit contains a March 2017 letter from the City informing Tobin that she would receive a 3 percent COLA based on a consumer price index (CPI) of 3.5 percent and "0.5% will be banked for future use when the CPI is under 3%." This letter shows that the City was applying the COLA rule adopted prior to the 1989 Ordinance, which rule authorized COLA adjustments up to 3 percent with banking of any excess, rather than the flat 3 percent adopted in 2006 for individuals such as Tobin who retired after July 1, 2001. (See San José Ord. No. 26353, amending San José Mun. Code, § 3.28.30.1, subd. (B).)

Tobin cannot turn around now and argue for the first time on appeal that she did not receive the COLA payments due her under the FCERS plan before the 1989 Ordinance. " ' "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal . . . ." ' " (*Hewlett-Packard Co. v. Oracle Corp*. (2021) 65 Cal.App.5th 506, 548.) There is an exception to this rule giving appellate courts discretion to consider for the first time on appeal "a pure question of law which is presented by undisputed facts." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394; *Ward v. Taggart* (1969) 51 Cal.2d 736, 742.) But this exception does not apply where, as here,

10

the appellant makes fact-based arguments because it is unfair to consider such arguments without giving the opposing party an opportunity to present evidence contesting the facts on which the arguments are based.  (*Panopulos v. Maders* (1956) 47 Cal.2d 337, 341; *Krechniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 725.)

Accordingly, Tobin has forfeited the argument that the City impaired her pension rights by failing to make COLA payments owed under the FCERS plan prior to the 1989 Ordinance.  Moreover, as she has not challenged the denial of her impairment claim on any other ground in her briefing, we affirm the trial court's denial of the claim.

C.     *The Remaining Claims*

The trial court denied Tobin's remaining claims for promissory estoppel, equitable estoppel, and breach of fiduciary duty because they fall within the releases in her 2002 separation agreement.  On appeal, Tobin does not dispute that her claims fit within the plain language of the releases.  Instead, she argues that the releases should not be applied according to their plain language for three reasons:  (1) she did not intend to release her estoppel and fiduciary duty claims; (2) the releases were for claims relating to her work for United Way of Silicon Valley; and (3) her estoppel and fiduciary duty claims fall within a carve-out for service retirement benefits.  These arguments are unpersuasive.

In December 2002, Tobin and the City entered into a separation agreement.  The stated purpose of the agreement was to resolve "any dispute or potential disputes" between Tobin and the City.  To this end, the agreement contained two releases.  First, Tobin promised to release "any and all claims, of any kind, against" against the City and its officials, and to not initiate " any claim . . . of any kind, including claims relating to . . . misrepresentation or fraud" and "tort claims of any nature known and unknown, suspected or unsuspected, for damages . . . past, present and future" that are "related to her employment with the City."  Second, Tobin waived Civil Code section 1542, which prohibits releases of unknown claims, and released "any and all claims" stemming from conduct "prior to or simultaneously with" execution of the agreement.

11

Tobin's equitable estoppel, promissory estoppel, and breach of fiduciary duty claims fall squarely within these releases. As the trial court recognized, the releases are "extremely broad." In addition to covering "any and all claims" against the City and its officials, the first release expressly includes claims for "misrepresentation or fraud" and "tort" seeking "damages . . . past, present, and future . . . related to [Tobin's] employment with the City." Tobin's estoppel and fiduciary duty claims fit within this release because they are based on misleading representations and omissions, seek damages, and concern the pension that she earned while working for the City. Tobin's estoppel and fiduciary duty claims also fit within the agreement's second release because, as the trial court determined, these claims stem from alleged conduct by the City prior to or simultaneously with the separation agreement's execution.

With one immaterial exception,[5] Tobin does not dispute that her estoppel and fiduciary duty claims are based on representations and omissions prior to or simultaneously with execution of the separation agreement or that they otherwise fit within the literal language of the releases. Instead, Tobin argues that the releases are not enforceable because she did not intend to release future claims against the City for cutting her COLA. In support of this argument, Tobin cites a 1963 Supreme Court decision, *Casey v. Proctor* (1963) 59 Cal.2d 97 (*Casey*). In *Casey*, the Supreme Court held that Civil Code section 1542 prevents "the mere recital" that unknown claims are released from barring claims for injuries not discovered until later "in the absence of a showing of a conscious understanding that if the injuries were suffered which had not yet manifested themselves, they too would be discharged by the release." (*Casey*, at p. 109.) Here, however, there is much more than a mere recital. As noted above, the separation

---

[5] At oral argument, Tobin pointed to a January 9, 2004 letter that she requested from the City for her bank. The letter, however, merely stated that Tobin would receive a monthly pension of slightly more than $8,000 plus a COLA of "3% maximum each April 1 beginning in 2005 . . . based on the Bay Area Consumer Price Index." This statement is consistent with the benefits promised in the 1989 Ordinance and provided to Tobin.

12

agreement contains two releases, one of which expressly states that "Tobin voluntarily waives her rights under Section 1542." Moreover, the agreement required Tobin to "acknowledge[] that she has knowingly waived any and all rights under Civil Code 1542" by initialing the waiver, which Tobin did. Tobin offers no reason why the express waiver initialed by her fails to satisfy *Casey*. (See *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1170-1171 [finding unknown claims released under *Casey* based on an express waiver of section 1542].)

Citing a Court of Appeal decision, *Butler v. Vons Companies, Inc.* (2006) 140 Cal.App.4th 943 (*Butler*), Tobin also argues that the separation agreement's release should be construed to be implicitly limited to claims concerning Tobin's "loan" to United Way of Silicon Valley. However, far from suggesting that it is so limited, the separation agreement states that it is intended to resolve "*any* dispute or potential disputes between the parties, except as otherwise explicitly stated." (Italics added.) In addition, the first release states that it includes claims "during, from or related to employment with the City of San Jose," not United Way of Silicon Valley, as Tobin's argument would suggest.

Nor does *Butler* suggest otherwise. That case dealt with a release agreement signed by an employee and his union as well as the employer in connection with a grievance that the union filed on behalf of the employee. (*Butler*, at p. 946.) The decision found it reasonable to conclude that the release was limited to the matters covered by the grievance because "[the union's] standing was limited to negotiating the . . . grievance." (*Id*. at p. 948). Here, however, the agreement containing the release was *not* joined by a third party, and there is no reason to infer that the agreement was limited to matters involving the third party.

Finally, Tobin argues that, even if her claims are covered by the separation agreement's releases, they fall within an exception carved out of the releases. The first release, Tobin notes, states that "nothing in this release affects Tobin's right to service

13

retirement benefits as provided by the terms of the Federated Employees' Retirement Plan in effect on the date of Tobin's retirement." Tobin argues that this carve-out applies to her estoppel and fiduciary duty claims because those claims are based on reduction of her retirement benefits and damages will be measured by the amount of the reduction in those benefits. The carve-out, however, does not cover all claims relating to retirement benefits; it applies only to Tobin's "right to service benefits as provided by the terms" of the FCERS plan. As a consequence, the carve-out covers a claim for breach of the plan or for impairment of contract relating to the plan because such claims are based on Tobin's rights under the plan.

However, as the trial court recognized, Tobin's estoppel and fiduciary duty claims are not based on her right to benefits under the FCERS plan. For example, her equitable estoppel claim is based on alleged misrepresentations concerning the retirement allowances that she would receive, upon which Tobin and other retirees allegedly relied in deciding whether to retire or to leave City service for other opportunities with better retirement benefits. Similarly, Tobin's promissory estoppel claim is based on the City's alleged promises to provide retirees with "the full amount of their promised pension benefits without regard to any limits imposed by IRC 415(b)," not her actual right to benefits under the terms of the FCERS plan. And her fiduciary duty claim is based on an alleged failure to inform retirees of limitations that might be imposed on their pension benefits. As Tobin herself notes, these claims are independent of her impairment claim, and theoretically she could prevail on them even if the impairment claim fails. As a consequence, Tobin's estoppel claims are not based on her right to service benefits under the terms of the FCERS plan and therefore fall outside the separation agreement's carve-out.

14

## III.    DISPOSITION

Tobin's appeal of the judgment in favor of the Board of Administration of the Federated City Employees Retirement System is dismissed.  The judgment in favor of the City and the city manager is affirmed.

_____
BROMBERG, J.

WE CONCUR:


_____
BAMATTRE-MANOUKIAN, ACTING P. J.



_____
DANNER, J.




_Tobin v. City of San Jose et al._
H049987